# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

MARK ANTHONY COLBERT,
Defendant and Appellant.

S238954

Sixth Appellate District
H042499

Santa Clara County Superior Court
206805

---

January 24, 2019

Justice Kruger authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu, Cuéllar, and Tangeman[*] concurred.

---

[*]     Associate Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. COLBERT

S238954

Opinion of the Court by Kruger, J.

In approving Proposition 47, the 2014 voter initiative that reclassified certain theft-related and drug-related felonies as misdemeanors, voters created a new misdemeanor offense called "shoplifting." (Pen. Code, § 459.5.) Shoplifting is defined as the act of entering a commercial establishment with intent to steal property while the establishment is open during regular business hours, where the value of the property taken or intended to be taken is $950 or less—an act that had formerly been punishable as felony burglary. (*Ibid.*; see *id.*, § 459.) This case presents a question concerning the line separating shoplifting from burglary: If a person enters a store during regular business hours but then proceeds to a private back office with intent to steal therefrom, which crime has he or she committed? We conclude that entering an interior room that is objectively identifiable as off-limits to the public with intent to steal therefrom is not shoplifting, but instead remains punishable as burglary.

**I.**

On four separate occasions in 1996 and 1997, defendant Mark Anthony Colbert, acting with an accomplice, stole money from the back offices of various convenience stores and a gas station. On each occasion, defendant and his accomplice employed the same modus operandi. They entered the stores during regular business hours, and while one of them distracted

the store clerk by purchasing or redeeming lottery tickets, the other either slipped or broke into the back offices to steal money he found there.

Defendant was charged with four counts of second degree burglary, an alternative felony-misdemeanor (also known as a "wobbler") (Pen. Code, §§ 459, 460, subd. (b)). For the first three counts, the People alleged that defendant and his accomplice took, respectively, $300, $318, and $3,000 in cash; no money was taken in count 4, because the accomplice was confronted by an employee while in the back office. A jury found defendant guilty and he was sentenced to an aggregate prison term of two years and eight months, to run consecutively to a six-year prison term for an unrelated robbery.

In 2014, California voters approved Proposition 47, the Safe Neighborhoods and Schools Act, which reclassified as misdemeanors certain drug-related and theft-related offenses that had previously been classified as felonies or wobblers. As relevant here, Proposition 47 added a section to the Penal Code creating a new offense of misdemeanor shoplifting. Section 459.5, subdivision (a) provides, in pertinent part: "Notwithstanding Section 459 [the burglary statute], shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary." With certain exceptions not relevant here, the offense is punishable as a

misdemeanor.  (Pen. Code, § 459.5, subd. (a).)[1]  Subdivision (b) limits a prosecutor's discretion in charging:  "Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting.  No person who is charged with shoplifting may also be charged with burglary or theft of the same property."  The effect of the provision is to reclassify as misdemeanors certain crimes that were formerly punishable as felony burglary.

Proposition 47 also created a mechanism for extending its benefits to criminal defendants who, like defendant in this case, had been sentenced before the initiative's passage.  As relevant here, Penal Code section 1170.18, subdivision (f) provides:  "A person who has completed his or her sentence for a conviction . . . of a felony or felonies who would have been guilty of a misdemeanor under this act had this act been in effect at the time of the offense, may file an application before the trial court that entered the judgment of conviction in his or her case to have the felony conviction or convictions designated as misdemeanors."  If the offender meets the statutory criteria, "the court shall designate the felony offense or offenses as a misdemeanor." (*Id.*, § 1170.18, subd. (g).)[2]

---

[1]     The statute provides that a person who has one or more prior convictions for one of the particularly serious or violent felonies colloquially known as "super strikes" (see Pen. Code, § 667, subd. (e)(2)(C)(iv)) or who has been convicted of a crime that requires sex offender registration (*id.*, § 290, subd. (c)) is subject to the greater penalties set out in Penal Code section 1170, subdivision (h).  (*Id.*, § 459.5, subd. (a).)

[2]     This provision once again excludes persons convicted of one or more "super strikes" (Pen. Code, § 667, subd. (e)(2)(C)(iv)) and persons convicted of one or more crimes that require sex offender registration (*id.*, § 290, subd. (c)).  (*Id.*, § 1170.18, subd. (i).)  Neither exclusion is at issue here.

In 2015, defendant petitioned the superior court to redesignate two of his four felony burglary convictions as shoplifting misdemeanors under Penal Code section 1170.18, subdivision (f). Defendant failed to specify which two convictions, precisely, he sought to redesignate, but the omission made no difference; the trial court denied the petition on the ground that none of his burglary convictions was eligible for redesignation in any event. The court listed three grounds for its conclusion: (1) the "record reflects that each offense was based upon entry into a private area office area [*sic*] and not a commercial establishment that was open during business hours"; (2) the amount taken in count 3 exceeded the statutory maximum of $950[3]; and (3) defendant employed the same modus operandi in all counts and therefore the theft of more than $3,000 in count 3 "strongly suggests that the amount *intended to be taken* in each case exceeded $950."

The Court of Appeal affirmed on the first ground only.[4] The court held that when defendant entered the private offices

---

[3] The superior court's order mistakenly identifies count 2 as the count in which the value of property taken exceeds $950.

[4] The Court of Appeal also briefly addressed the trial court's third alternative ground for denial—that is, that the use of the same modus operandi in each incident suggested that defendant intended to take more than $950 in each theft. The court rejected the argument, explaining that the record neither demonstrated that the commercial establishments routinely stored more than $950 in their back offices nor that defendant held such belief; the court therefore concluded that the amount taken in each theft was a matter of circumstance, as opposed to intent. The Attorney General has not asked us to reconsider that conclusion.

at issue, he had exited the part of the "commercial establishment" covered by Penal Code section 459.5 (section 459.5) and entered a "discrete area where [his] thefts could not be considered shoplifting." The court reasoned that the term " 'commercial establishment' " generally refers to an establishment that is " 'primarily engaged in commerce, that is, the buying and selling of goods or services.' " The court concluded that the back offices did not meet this description; by contrast to the areas in which the general public is invited to peruse the goods on display, the back offices were "not areas in which goods were bought and sold" but were rather "areas off-limits to the general public." Defendant's sole intent, the court observed, was to steal from these private rooms; "otherwise he and his accomplice would have remained in the area where . . . goods were displayed rather than intruding into the private areas where the employees were likely to keep their personal belongings, such as purses and wallets, and where the business was likely to store larger amounts of cash."

Justice Rushing dissented. In his view, the statute's plain language compels the conclusion that defendant committed shoplifting by entering the stores with intent to commit larceny. He opined that nonpublic areas form part of the "commercial establishment" covered by the shoplifting statute and thus

Defendant, for his part, does not dispute that the conviction stemming from count 3 involved theft of more than $950 and is therefore ineligible for redesignation as a misdemeanor under Penal Code sections 459.5 and 1170.18, subdivision (f). We therefore limit our consideration to the remaining three burglary convictions.

disagreed with the majority that defendant exited the establishment by venturing into a nonpublic interior room.

As the dissenting opinion observed, the majority opinion created a conflict with another Proposition 47 case, *People v. Hallam* (2016) 3 Cal.App.5th 905. In that case, the defendant had been convicted of second degree burglary after he entered a computer store through a back door and stole an air compressor from an employee restroom. (Although the defendant had previously used the restroom with the permission of store employees, he later returned, uninvited.) The Court of Appeal held the defendant's conduct constituted shoplifting under section 459.5 and the trial court therefore should have granted the defendant's petition to redesignate the burglary conviction as a misdemeanor. (*Hallam*, at p. 908; see *id.* at p. 913.)

We granted defendant's petition for review to resolve the conflict about the application of section 459.5 to offenses involving entries into interior rooms that are off-limits to the public with intent to steal therefrom.

## II.

## A.

For more than a century before Proposition 47, entry into a store with intent to steal was understood to constitute burglary under California law, regardless of whether the defendant entered the store during its regular business hours. (*People v. Gonzales* (2017) 2 Cal.5th 858, 872 (*Gonzales*); see *People v. Barry* (1892) 94 Cal. 481, 483 (*Barry*).) The reasons for this understanding lie in the early history of California's burglary law. At common law, the crime of burglary had been understood to require (among other things) a breaking and entering with intent to commit larceny or any felony. When the

6

California Legislature enacted the present-day burglary statute in 1872, however, it dispensed with the common law requirement of a breaking, instead defining burglary simply as entry into a specified structure (including a "store"), a room, or a vehicle with intent to commit larceny or any felony. (Pen. Code, § 459; see *People v. Gauze* (1975) 15 Cal.3d 709, 713.) Of course, as this court would later confirm, the burglary statute did preserve the basic principle underlying the common law breaking requirement: "that in order for burglary to occur, 'The entry must be *without consent*.'" (*Gauze*, at p. 713; see *id.* at pp. 713–714 [" 'If the possessor actually invites the defendant, or actively assists in the entrance, e.g., by opening a door, there is no burglary.' "].) But in *Barry*, at page 483, this court interpreted the burglary statute to apply to a thief's entry into a store during regular business hours, despite the fact the owner had opened the door to the general consuming public. The court reasoned: "[A] party who enters with the intention to commit a felony enters without an invitation. He is not one of the public invited, nor is he entitled to enter." (*Ibid*.) The effect of this holding was to extend the coverage of the burglary statute to a class of offenses that might colloquially be described as "simple shoplifting" (*Descamps v. United States* (2013) 570 U.S. 254, 264), rendering them punishable as felonies (Pen. Code, §§ 459, 460, 461, subd. (b)).

Proposition 47 changed the law by defining a new crime of misdemeanor shoplifting and, in effect, "carving out" this "lesser crime" from the "preexisting felony." (*People v. Martinez* (2018) 4 Cal.5th 647, 651.) The statute provides that any act involving "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or

intended to be taken does not exceed [$950]" is punishable only as misdemeanor shoplifting, not burglary. (§ 459.5, subds. (a) & (b); see *Gonzales*, *supra*, 2 Cal.5th at p. 876 ["A defendant must be charged only with shoplifting when the statute applies. It expressly prohibits alternate charging and ensures only misdemeanor treatment for the underlying described conduct."].) "Any other entry into a commercial establishment with intent to commit larceny" remains punishable as burglary. (§ 459.5, subd. (a).)

Both parties in this case agree that defendant entered a "commercial establishment" when he first entered the stores from which he stole. Defendant argues that is the end of the story, because the shoplifting statute draws no distinction between entering a store with intent to steal property from areas open to the public and entering a private back office with intent to steal property therefrom. The Attorney General argues, and the Court of Appeal agreed, that the shoplifting statute applies to entries with intent to steal from commercial establishments open to the public during regular business hours *only to the extent* the establishments are open to the public during those hours. In the Attorney General's view, if a defendant enters a commercial establishment open during regular business hours, but then proceeds to enter an interior room that is off-limits to the public with intent to steal property there, the crime is punishable as burglary and not shoplifting.

## B.

This question concerning the meaning of Proposition 47 is a matter of statutory interpretation, and we employ familiar principles to resolve it. (See *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900–901.) We begin by examining the words of

the statute, affording them "their ordinary and usual meaning and viewing them in their statutory context" (*Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198), for " 'if the statutory language is not ambiguous, then . . . the plain meaning of the language governs' " (*People v. Montes* (2003) 31 Cal.4th 350, 356). Defendant argues that the statutory text clearly resolves this question in his favor—and indeed, suggests we have already said as much in a prior case. He is wrong on both counts.

The notion that our precedent resolves the question here is easily disposed of. Defendant points to our decision in *Gonzales*, in which we interpreted section 459.5 to apply to an entry into a commercial establishment with intent to commit forms of theft other than larceny, including theft by false pretenses. (*Gonzales*, *supra*, 2 Cal.5th at p. 862.) In so holding, we rejected the Attorney General's argument that it "would be absurd for the shoplifting statute to encompass any form of theft other than larceny *of openly displayed merchandise*" because, if it did, the statute "would require a person to be prosecuted for shoplifting even if he enters a commercial establishment to commit a theft from an area of the store closed to the public, 'like a back office or a private locker room . . . .' " (*Id.* at p. 873.) Our rejection of the Attorney General's argument, however, was cabined to the issue before us. Without addressing the premise of the Attorney General's argument about the statute's application to back offices, we explained that section 459.5, by its text, is not limited to theft of openly displayed merchandise. While another statute, Penal Code section 490.5, prescribes penalties for "petty theft involving merchandise taken from a merchant's premises" (*id*., subd. (a)), section 459.5 applies to entries with intent to commit theft of "property" more broadly.

(See *Gonzales*, at p. 874.) We had no occasion to decide whether and how section 459.5 applies to entries into back offices or other private interior rooms with intent to steal property therefrom.

Turning back to the statutory text, defendant points to section 459.5's unadorned reference to entering a "commercial establishment" during regular business hours to argue that the plain language of section 459.5 applies to his criminal conduct. He argues that the shoplifting crime was complete once he first entered the stores in question with intent to steal money from the private back offices; in his view, the later entry into these interior offices to steal the money has no legal significance other than supplying evidence that he entered the stores with an intent to steal.

We agree it is possible to read the text of section 459.5, in isolation, as broadly applying to an entry into a commercial establishment with intent to steal from a private back office or other off-limits interior room. In ordinary speech, as defendant emphasizes, we would generally refer to a private interior room as part of the overarching "commercial establishment." And while intruding into a back office to steal an employee's personal belongings is no one's idea of "shoplifting," that alone cannot be dispositive, as *Gonzales* makes clear. We there explained: "[S]ection 459.5 provides a specific definition of the term 'shoplifting'" that clearly deviates in certain respects from the colloquial understanding of the term; where the two diverge, it is the statutory definition, not the colloquial understanding, that must control. (*Gonzales*, *supra*, 2 Cal.5th at p. 871; see *id.* at pp. 873–874.)

Still, defendant's proposed interpretation of section 459.5 is not clearly correct. While it may be more consistent with

casual usage to read "commercial establishment" to refer to a store's entire physical plant, it is also possible to read section 459.5, in context, in the more specialized way the Attorney General proposes. Under that reading, the term "commercial establishment" would refer only to that portion of the physical plant that is used for "commerce"—a term both parties understand to mean the buying and selling of goods—and to exclude private interior rooms in which no goods or services are sold to the public.

The Attorney General's narrower reading has several points in its favor. It is certainly more consistent with the ordinary understanding of "shoplifting." (Cf., e.g., *Leocal v. Ashcroft* (2004) 543 U.S. 1, 11 [resolving interpretive dispute about defined term by reference to the term's ordinary meaning].) But more importantly, the reading fits with the surrounding language of section 459.5. The statute limits shoplifting to those entries into a commercial establishment made "while that establishment is open during regular business hours." (§ 459.5, subd. (a).) As the Attorney General notes, this language evinces some intent to limit the scope of shoplifting based on the extent to which the establishment is "open" to the public—which is to say, to the parameters of a commercial establishment's invitation to enter to peruse the goods and services on offer.

And perhaps more importantly yet, this reading makes sense given the history of the burglary statute and its judicial construction. (See *Gonzales*, *supra*, 2 Cal.5th at p. 869 [interpreting section 459.5 in light of similar considerations].) The burglary statute, by its terms, applies both to entries to structures, including stores, and to entries to rooms within those structures. (Pen. Code, § 459.) Interpreting that language,

California courts have long held that a burglary conviction may be based on the entry into a room within a structure, even though the defendant's initial entry into the structure may not itself have been punishable as burglary. In *People v. Young* (1884) 65 Cal. 225, for example, the defendant entered a public railway station, then, from the public waiting room, proceeded to enter a ticket office with intent to steal therefrom. We rejected the theory that section 459 applied only if the defendant formed the intent to steal when he first entered the railway station; it was enough if the defendant formed an intent to steal before he crossed from the waiting room into the ticket office. This holding, as we would later explain, "reflected the prevailing common law understanding that entry from inside a structure into a room within that structure could constitute a burglary." (*People v. Sparks* (2002) 28 Cal.4th 71, 80.) For support, *Young* cited Blackstone, who had explained that a person who entered a room through an open door ordinarily could not be convicted of a burglary—but the same person could be convicted of burglary if, once inside, that person broke into an interior room within the structure. (*Young*, at p. 226, citing 4 Blackstone, Commentaries 226 (Blackstone); see *Sparks*, at p. 80, fn. 14.)

Applying the same set of principles, a long line of California cases have upheld burglary convictions based on entries with the requisite intent into interior rooms within larger structures, including stores and restaurants. (See, e.g., *People v. Sparks*, *supra*, 28 Cal.4th at pp. 87–88 [trial court correctly instructed jury that entry into victim's bedroom with intent to commit rape constituted burglary]; *People v. Davis* (1959) 175 Cal.App.2d 365 [burglary conviction may be based on entry into closed office within a service station]; *People v. Gaytan* (1940) 38 Cal.App.2d 83, 87 [burglary conviction may be

based on entry into a storage room of a cafe with requisite felonious intent].)

This history supports a reading of section 459.5 that distinguishes between initial entries into stores and subsequent entries into certain interior rooms. But that is not all; the history also lends support to the specific distinction we are asked here to adopt, between entering a store while it is open during regular business hours and entering an interior room within the store that is off-limits to the public. The reason for this particular distinction lies in the same general principle articulated by Blackstone and reflected in *Young*: Just as the common law of burglary was not prepared to punish a person who walked through an open door, neither was it prepared to punish a person who walked through a door at the express invitation of the owner or occupant. (See *People v. Gauze*, *supra*, 15 Cal.3d at pp. 713–714; LaFave, Substantive Criminal Law (3d ed. 2018) § 21.1(a), p. 269.) But the law was prepared to punish the person who exceeded the scope of his or her invitation by entering an internal room without consent. A person might be authorized to enter a building, but "[w]hen the authority granted was restricted to certain portions of the structure or times of day, there was a breaking"—and hence a burglary— "when the structure was opened in violation of these restrictions." (LaFave, at p. 269; see 4 Blackstone, *supra*, at pp. 226–227 [explaining that servant commits burglary if he enters his master's chamber without authorization and with felonious design]; see also, e.g., *State v. Rio* (1951) 38 Wn.2d 446 [citing authorities for proposition that at common law burglary may be committed by house guest or invitee who, with the requisite intent, enters a room that he has no right to enter].) As translated to this context, the common law approach would

mean that (1) a customer invited to enter a store or other place where goods and services are sold could not be convicted of burglary, but (2) a person who exceeded the scope of the invitation by venturing into off-limits interior rooms would commit burglary if he or she did so with the requisite unlawful intent.

California law departed from this common law approach in certain respects in *Barry*, *supra*, 94 Cal. at page 483, which held that a customer who enters a public place with intent to steal can, in effect, consider himself uninvited. But our cases have nevertheless reaffirmed the continuing validity of the underlying principles. A burglary under Penal Code section 459 occurs when a defendant with the requisite intent enters a structure where he or she has no right to be, and a person has no right to be in a structure—or in a room within the structure (*People v. Sparks*, *supra*, 28 Cal.4th at pp. 81, 87)—without the effective consent of the owner or occupant. (See *People v. Gauze*, *supra*, 15 Cal.3d at p. 714.)

Because the whole point of section 459.5 is to redefine a class of burglary offenses as shoplifting, the history of the burglary statute and its judicial construction alone cannot be dispositive of the question here: whether an offense involving an entry into an off-limits room within a store *remains* punishable as burglary. The history does, however, leave us with two possible conclusions about the meaning of section 459.5. It is possible that section 459.5 does not speak more clearly to the problem of entries into off-limits interior rooms because it is designed to revoke the traditional distinction between structures into which a defendant has been invited and internal rooms to which he or she has not been invited. Alternatively, it is possible that section 459.5 does not speak

14

more clearly to the issue because it simply presumes the continuing validity of the traditional distinction. A closer examination of the purposes underlying the burglary statute and the changes made by section 459.5 persuades us that the second option is the correct one.

A primary purpose of the burglary law is " ' "to forestall the germination of a situation dangerous to personal safety" ' " by punishing entries into one of the structures listed in Penal Code section 459 with felonious intent. (*People v. Garcia* (2016) 62 Cal.4th 1116, 1138, quoting *People v. Gauze*, *supra*, 15 Cal.3d at p. 715.) Such unauthorized entries present " ' "the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence." ' " (*Garcia*, at p. 1138.) The burglary statute is thus designed "to protect against the increased risk to personal safety that attends the commission of a felony" in such locations, as well as "to prevent the invasion of an owner's or occupant's possessory interest in a space against 'a person who has no right to be in the building.' " (*Id.* at p. 1125.)

In enacting the shoplifting statute as part of Proposition 47, the electorate signaled that these interests do not apply in the same way when a person intends to steal property in a place where he or she has been *invited* to peruse the goods and services that are on offer. Store owners and employees do not, of course, consent to the theft of property. But the core of the crime of burglary is not theft but physical intrusion, and owners and employees have every reason to expect that members of the public will enter where they have been invited.

But it is different when members of the public venture into private back offices, employee locker rooms, or other interior rooms that are objectively identifiable as off-limits. The nature of the intrusion, and the potential risk to personal safety, when a person exceeds the *physical* scope of his or her invitation to enter are not dissimilar from those associated with exceeding the *temporal* scope of the invitation by entering after regular business hours—conduct that clearly remains punishable as burglary after the enactment of section 459.5. (§ 459.5, subd. (a).)

In instituting reduced penalties for less serious theft offenses under Proposition 47, the electorate evinced no intent to alter the burglary law's protection against this sort of invasion of security and property interests.[5] The ballot materials, which we may consider as part of our inquiry (*People v. Mentch* (2008) 45 Cal.4th 274, 282), described shoplifting simply as "a type of petty theft." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35.) The materials made no mention of either of the recognized harms of burglary: the element of intrusion and the accompanying risks to personal safety. Nothing in the ballot materials—much less the enacted text of the statute—provides any indication that the voters who passed Proposition 47 intended to roll back the law's protection for employees in off-limits interior rooms, such as private back offices, where they are likely to be "at their most vulnerable." (*People v. Garcia*, *supra*, 62 Cal.4th at p. 1125.)

---

[5] *People v. Hallam, supra*, 3 Cal.App.5th 905 is disapproved insofar as it is inconsistent with this opinion.

For these reasons, we conclude that entering an interior room that is objectively identifiable as off-limits to the public with intent to steal therefrom is not punishable as shoplifting under section 459.5, but instead remains punishable as burglary. This interpretation of section 459.5 makes it unnecessary for us to consider the Attorney General's alternative argument that defendant's entries into the back offices at issue are punishable as burglary under the rule of *People v. Garcia, supra*, 62 Cal.4th 1116. In that case, we interpreted Penal Code section 459 to permit multiple burglary convictions based on a defendant's initial entry into a structure and a subsequent entry into a room within the structure if "the subsequently entered room provides a separate and objectively reasonable expectation of protection from intrusion relative to the larger structure." (*Garcia*, at p. 1120.) For purposes of identifying the line dividing shoplifting from burglary after Proposition 47, we conclude it is enough that defendant entered an interior room objectively identifiable as off-limits to the public. We need not decide whether entries into these rooms would also have supported multiple burglary convictions under the distinct test articulated in *Garcia*.

## C.

In this case it is undisputed that defendant's burglary convictions were based on entries into back offices that were objectively identifiable as off-limits to the public, with an intent to steal therefrom. Had Proposition 47 been in effect at the time of defendant's offenses, it would have made no difference; he would still be guilty of burglary and not shoplifting. (See Pen. Code, §§ 459.5, 1170.18, subd. (f).) We conclude that defendant therefore is not entitled to redesignate his burglary convictions as misdemeanors under Proposition 47.

## III.

The judgment of the Court of Appeal is affirmed.

**KRUGER, J.**

**We Concur:**

**CANTIL-SAKAUYE , C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**TANGEMAN, J.**[*]

---

[*]     Associate Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Colbert
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 5 Cal.App.5th 385
**Rehearing Granted**

_____

**Opinion No.** S238954
**Date Filed:** January 24, 2019
_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Linda R. Clark

_____

**Counsel:**

Kimberly Taylor, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, René A. Chacón, Seth K. Schalit and Victoria Ratnikova, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kimberly Taylor
P.O. Box 1123
Alameda, CA  94501
(510) 747-8488

Victoria Ratnikova
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5830