Filed 11/26/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D074352 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD271876) |
| BRIAN CHRISTOPHER JENNINGS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael S. Groch, Judge. Affirmed in part, reversed in part and remanded.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Marvin E. Mizell and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

Brian Christopher Jennings appeals a judgment following his jury conviction on four counts of burglary (Pen. Code, § 459)[1] and one count of attempted burglary (§§ 664, 459). Jennings challenges only his count 3 burglary conviction, which offense involved his alleged entry into a commercial establishment with intent to commit larceny while that establishment was open during regular business hours. Proposition 47, enacted in 2014, created a new misdemeanor offense of "shoplifting," as set forth in section 459.5, subdivision (a), providing: "Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary. . . ."

On appeal, Jennings contends that because the new section 459.5 shoplifting offense was "carved out" of the general section 459 burglary offense, the prosecution was required, in the circumstances of this case, to prove that he intended to take property with a value exceeding $950. He further contends that because there is insufficient evidence to support a finding that he intended to take property with a value exceeding $950, his count 3 burglary conviction must be reversed. Alternatively, he contends the trial court prejudicially erred by not sua sponte instructing the jury on the prosecution's duty to prove beyond a reasonable doubt the elements of burglary, including proof that he

[1]     All statutory references are to the Penal Code unless otherwise specified.

2

intended to take property with a value exceeding $950. In his supplemental letter brief, he argues that newly enacted Senate Bill No. 136, which amended section 667.5, subdivision (b), to limit its prior prison term enhancement to only prior prison terms for sexually violent offenses, should be applied retroactively to his case pursuant to *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) and therefore his one-year prior prison term enhancement under section 667.5, subdivision (b), should be stricken.

As discussed below, we conclude that Proposition 47 changed the definition of burglary to exclude from that offense an entry of a commercial establishment with intent to commit larceny of property with a value of $950 or less while that establishment is open during regular business hours, which conduct now constitutes the misdemeanor offense of shoplifting under section 459.5. We conclude there is insufficient evidence to support a finding that Jennings intended to take property with a value exceeding $950 when he entered the commercial establishment in count 3. We further conclude that the trial court prejudicially erred by not instructing sua sponte on the $950 property value requirement for the count 3 burglary charge. Finally, we agree Senate Bill No. 136 applies retroactively to Jennings's case pursuant to *Estrada* and therefore reverse the court's imposition and execution of a consecutive one-year section 667.5, subdivision (b) prior prison term enhancement. Accordingly, we reverse his count 3 burglary conviction and one-year section 667.5, subdivision (b) prior prison term enhancement and remand for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

An amended information charged Jennings with five counts of burglary (§ 459, counts 1 through 5) and one count of attempted burglary (§§ 664, 459, count 6). The amended information also alleged that Jennings: (1) was ineligible for probation pursuant to section 1203, subdivision (e)(4); (2) had served five prior prison terms within the meaning of sections 667.5, subdivision (b), and 668; (3) had been convicted of a serious felony within the meaning of sections 667, subdivision (a)(1), 668, and 1192.7, subdivision (c); and (4) had been convicted of a serious or violent felony within the meaning of sections 667, subdivisions (b) through (i), 668, and 1170.12.

Jennings waived his right to counsel and represented himself at trial. Prior to trial, he admitted the truth of the prior conviction allegations.

*Count 2*.[2] At trial, the prosecution presented evidence showing that on December 24, 2016, Jennings committed a burglary of the office of Planck Aero Systems (count 2). Jennings and a male accomplice took two high-end commercial drones and their two hard plastic "Pelican" carrying cases from the office. One drone had a hardware value of about $2,000 and the second drone had a hardware value of about $3,000 to $5,000. Their retail prices were between $19,000 and $25,000 each.

*Count 3*. The prosecution also presented evidence showing that on January 6, 2017, Jennings entered the Discount Hobby Warehouse in Kearny Mesa with a drone. The store sold radio-controlled (RC) cars, helicopters, and drones. John Weaver, the

---

[2]    For purposes of disposing of this appeal, we need discuss only the evidence regarding the alleged burglaries in counts 2 and 3.

store's owner, testified that Jennings asked him whether he could trade the drone for an RC car or truck. However, Weaver was not interested in the drone and Jennings left the store without any of the store's merchandise.

In his defense, Jennings testified that he knew the drone was stolen when he took the drone to the hobby store. His intent was to get rid of the drone by trading it for "a small RC or something for my neighbor," explaining that his neighbor had four children.

*Verdict and sentencing*. The jury found Jennings guilty on counts 2 through 6. Because the jury was unable to reach a verdict on count 1, the court declared a mistrial on, and later dismissed, that count. The court sentenced him to a four-year prison term for his count 2 burglary, consecutive 16-month terms for each of his other burglary convictions (counts 3, 4, and 5), a consecutive eight-month term for his count 6 attempted burglary conviction, and a consecutive one-year term for one of the prior prison term enhancements, for a total prison term of nine years eight months.[3] Jennings timely filed a notice of appeal. On August 2, 2019, we requested supplemental letter briefs by the parties on the impact of *In re E.P.* (2019) 35 Cal.App.5th 792 (*E.P.*), which opinion was issued after the parties' briefs were filed in this case. At oral argument on October 18, 2019, we requested supplemental letter briefs to be filed by the parties within 30 days on the application to this case of Senate Bill No. 136, which was enacted on October 8, 2019, after the parties' briefs were filed in this case.

---

3    The court struck the punishment for the remaining four prior prison term enhancements.

DISCUSSION

I

*Proposition 47 and New Crime of Shoplifting*

In November 2014, "the electorate passed initiative measure Proposition 47, known as the Safe Neighborhoods and Schools Act (the Act), reducing penalties for certain theft and drug offenses by amending existing statutes.  [Citation.]  The Act also added several new provisions, including . . . section 459.5, which created the crime of shoplifting."  (*People v. Gonzales* (2017) 2 Cal.5th 858, 863 (*Gonzales*).)  "Proposition 47 changed the law by defining a new crime of misdemeanor shoplifting and, in effect, 'carving out' this 'lesser crime' from the 'preexisting felony' [of burglary]."  (*People v. Colbert* (2019) 6 Cal.5th 596, 602 (*Colbert*), quoting *People v. Martinez* (2018) 4 Cal.5th 647, 651.)  "Through its various provisions, Proposition 47 made clear that certain types of criminal conduct once punishable as felonies now constitute only misdemeanors."  (*Martinez*, at p. 651.)  The Legislative Analyst explained in the Proposition 47 voter pamphlet:  "Under current law, shoplifting property worth $950 or less (a type of petty theft) is often a misdemeanor.  However, such crimes can also be charged as burglary, which is a wobbler.  Under [Proposition 47], shoplifting property worth $950 or less would always be a misdemeanor and could not be charged as burglary."  (Voter Information Guide, Gen. Elect. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35, quoted in *Gonzales*, at pp. 869-870.)  Therefore, section 459.5 shoplifting is " 'always' . . . classified as [a] misdemeanor[] when the value of property [is] $950 or less."  (*Gonzales*, at p. 870.)

6

New section 459.5, enacted by Proposition 47, provides:

> "(a) Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary. Shoplifting shall be punished as a misdemeanor . . . .

> "(b) Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property."

The new misdemeanor crime of shoplifting "covers conduct that previously would have been classified as a burglary." (*E.P.*, *supra*, 35 Cal.App.5th at p. 797.)

Section 459 defines the offense of burglary, providing in pertinent part that a "person who enters any . . . store . . . with the intent to commit grand or petit larceny or any felony is guilty of burglary." However, on its enactment in 2014, "section 459.5 amended section 459 to exclude certain wrongful conduct which previously was second degree burglary." (*E.P.*, *supra*, 35 Cal.App.5th at p. 798.) Therefore, a defendant now cannot "simultaneously commit shoplifting and second degree burglary." (*E.P.*, at p. 798.)

*E.P.* stated: "Because a person cannot commit burglary if he actually committed shoplifting, a prosecutor who wishes to convict a defendant of burglary must prove the defendant did not commit shoplifting. [Citations.] Evidence the defendant committed shoplifting disproves the elements of the charged commercial burglary. Under these circumstances, the court must instruct the jury the prosecution has the burden to disprove the element(s) of shoplifting beyond a reasonable doubt to secure a burglary conviction."

7

(*E.P.*, *supra*, 35 Cal.App.5th at p. 798.) Alternatively stated, to prove that a defendant committed section 459 burglary based on a theory of intent to commit larceny when entering a commercial establishment that is open during regular business hours, "the prosecution [has] the burden of proving beyond a reasonable doubt that [the defendant] did not commit shoplifting." (*Id*. at p. 799.)

## II

### *Insufficient Evidence to Support Count 3 Burglary Conviction*

Jennings contends the prosecution was required, in the circumstances of this case, to prove that he intended to take property with a value that exceeded $950 to prove his guilt on the count 3 burglary charge. He further contends that the prosecution did not meet that burden of proof (i.e., there is insufficient evidence to support a finding that he intended to take property with a value exceeding $950) and therefore his count 3 burglary conviction must be reversed. We agree.

### A

When a conviction is challenged on appeal for insufficient evidence to support it, we apply the substantial evidence standard of review. (*People v. Vines* (2011) 51 Cal.4th 830, 869; *People v. Johnson* (1980) 26 Cal.3d 557, 578.) In so doing, we review the whole record in the light most favorable to the judgment to determine whether there is substantial evidence to support the conviction. (*Vines*, at p. 869; *Johnson*, at p. 578.) Substantial evidence is evidence that is reasonable, credible, and of solid value such that a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 660.) We do not reweigh the evidence, resolve

8

conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13.)

B

Contrary to the People's assertion, the language and legislative intent of section 459.5 and the cases interpreting that statute support Jennings's assertion that section 459.5 shoplifting is a separate and distinct offense from section 459 burglary. In defining the new offense of shoplifting, section 459.5, subdivision (a) begins with the introductory phrase "[n]otwithstanding [s]ection 459," thereby expressly excluding its shoplifting offense from the section 459 offense of burglary. Section 459.5, subdivision (a) further provides: "*Any other entry into a commercial establishment with intent to commit larceny is burglary.*" (Italics added.) If shoplifting and burglary were coextensive offenses, that statutory language would be superfluous and redundant. (*E.P.*, *supra*, 35 Cal.App.5th at p. 798.) Whenever reasonably possible, we must interpret statutes to avoid redundancy and give significance to each word and phrase. (*Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 114.)

Proposition 47's voter pamphlet expressed the intent that under new section 459.5, "shoplifting property worth $950 or less would always be a misdemeanor and could not be charged as burglary." (Voter Information Guide, *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35.) *Colbert* concluded that section 459.5 "in effect, 'carv[ed] out' [the] 'lesser crime' [of shoplifting] from the 'preexisting felony' [of burglary]." (*Colbert*, *supra*, 6 Cal.5th at p. 602.) Therefore, conduct that violates section 459.5 *always* constitutes misdemeanor shoplifting and cannot be punished as section 459 felony burglary. (*People*

9

*v. Martinez*, *supra*, 4 Cal.5th at p. 651; *Gonzales*, *supra*, 2 Cal.5th at p. 870; *E.P.*, *supra*, 35 Cal.App.5th at p. 797.) *Colbert* stated: "[T]he whole point of section 459.5 is to redefine a class of burglary offenses as shoplifting." (*Colbert*, at p. 606.) Accordingly, contrary to the People's assertion, a defendant now *cannot* "simultaneously commit shoplifting and second degree burglary." (*E.P.*, at p. 798.)

Furthermore, because section 459.5 shoplifting and section 459 burglary are separate and distinct offenses, when the prosecution has charged a defendant with section 459 burglary in circumstances involving an alleged entry of a commercial establishment with intent to commit larceny, the prosecution not only has the burden to prove each of the elements of section 459 burglary, but it also has the burden to disprove that the defendant committed section 459.5 shoplifting. (*E.P.*, *supra*, 35 Cal.App.5th at p. 799.) In particular, in such cases, the prosecutor must prove either: (1) the defendant did not enter the commercial establishment when it was open during regular business hours; or (2) the value of the property taken or intended to be taken exceeded $950. (§ 459.5, subd. (a); *E.P.*, at p. 801 ["the prosecution could have negated a finding of shoplifting by proving either that the stolen property was worth more than $950 or that [the defendant] did not enter the locker room when it was 'open during regular business hours' "].) As Jennings asserts, section 459.5, in effect, made the value of the property that he allegedly intended to take an element of section 459 burglary in this case and therefore the prosecution was required to prove beyond a reasonable doubt that he intended to take

10

property worth more than $950 when he entered the store.[4] (Cf. *People v. Gutierrez* (2018) 20 Cal.App.5th 847, 855 ["to obtain a felony conviction for vehicle theft [under Veh. Code, § 10851], the People were required to prove as an element of the crime that the rental car he took was worth more than $950 [as required by § 490.2, subd. (a), enacted by Proposition 47]."].)

C

Jennings asserts that because the prosecution did not present any evidence showing that the value of the property he allegedly intended to take on his entry into the hobby store exceeded $950, his count 3 burglary conviction must be reversed for insufficiency of evidence to support it. We agree. The People have not cited, and our review of the record has not revealed, *any* evidence that would support a reasonable inference Jennings intended to take property worth more than $950. Weaver, the store's owner, testified that he thought the man who entered his store (who Jennings later admitted was him) "wanted to get rid of [the drone]." Weaver stated that Jennings "sort of got the impression I probably didn't want to buy [the drone], but he did mention that maybe he could trade [it] for a model truck. You know, we sell radio-controlled trucks also. But, again, I wasn't interested in [the drone]." Weaver later testified that Jennings "mentioned that . . . maybe we could trade [the drone] for an RC car or a truck, actually." Weaver elaborated: "The only thing I recall was that he was interested in an RC truck. I

---

4      Jennings does not dispute that he entered the hobby store while it was open during regular business hours.

think he wanted to trade [the drone] for an RC truck." Weaver also testified that Jennings did not seem familiar with the kind of drone model he had.

Jennings testified that he knew the drone was stolen and "just want[ed] to get rid of it." He testified that at the time "[his] thought was, when I went there [i.e., to the hobby store], if I could get something for -- because my intent was to get a small RC or something for my neighbor. Because I have a neighbor that has four kids. I wanted to get something for them to play with." Jennings admitted he was going to take the stolen drone "to get an RC car for [his] neighbor." However, he did not obtain an RC car for his neighbor and left the store with the drone. Jennings testified that a couple of days later, he traded the two drones for a car someone was trying to sell on Facebook. He testified that before the trade he did not know if the two drones "were valuable enough. I didn't know what they were worth." After the car owner "looked at them and . . . wanted them," the car owner agreed to trade the car for the drones.

The evidence discussed above does not support a reasonable inference that Jennings intended to take property worth more than $950 when he entered the hobby store. First, Weaver did not testify that Jennings was interested in a specific RC car or truck, much less one that had a stated price exceeding $950. In fact, Weaver did not testify regarding the price range of the RC cars and trucks that his store had for sale at the time. Absent any evidence that Jennings was interested in trading the drone for a specific RC car or truck with a price in excess of $950, there is insufficient evidence to support a reasonable inference that he intended to take property worth more than $950 when he entered the store with the drone.

12

Second, contrary to the People's assertion, the testimony by Joshua Wells, Planck Aero Systems's chief executive officer, regarding the retail prices of the two drones (i.e., between $19,000 and $25,000 each) or their hardware values (between $2,000 and $5,000) without their expensive installed software, did not show either that Jennings knew the drones' true value or that he intended to trade one of the drones for an RC car or truck worth more than $950.  In fact, the value of the property Jennings intended to trade for an RC car or truck (i.e., the drone) was essentially irrelevant to the issue of the value of the property that he intended to trade it for (i.e., an RC car or truck).[5]  (Cf. *People v. Pak* (2016) 3 Cal.App.5th 1111, 1120 ["[C]onsidering the value of stolen goods brought into a pawn shop is not consistent with the plain language of the shoplifting statute.  Such property is neither 'taken' nor 'intended to be taken' from the victim pawn shop.  It is already in the defendant's possession. . . .  Under the circumstances of this case, the only property that possibly could be 'taken' or 'intended to be taken' was money from the pawn shop.  Once that money was taken, the relevant value for purposes of the shoplifting statute became the amount [the defendant] took."].)  Therefore, although there was evidence showing the true value of each drone exceeded $950, that evidence did not show that Jennings intended to trade the drone for an RC car or truck worth more than $950.  (*Ibid*.)

---

[5]     Likewise, contrary to the People's assertion, Jennings's statements to a police detective made five months after the alleged burglary that he knew the drones were "high end" and "custom-made" do not show that Jennings intended to trade one of the drones for property worth more than $950.

13

Likewise, contrary to the People's assertion, evidence of Jennings's subsequent trade of the two drones for a car did not support a reasonable inference that when he previously entered the hobby store he intended to trade one of the drones for an RC car or truck worth more than $950. Neither the value of the two drones, as presumably shown by their market equivalency in a trade for the car, nor the value of that car shows that Jennings intended to trade one of the drones for an RC car or truck worth more than $950 when he entered the hobby store a couple of days earlier. (Cf. *People v. Pak*, *supra*, 3 Cal.App.5th at p. 1120.) In any event, there was no testimony showing the market value of the car or how that value would be divided between the two drones or, in particular, the value attributed to the drone Jennings sought to trade for an RC car or truck. Furthermore, Jennings testified that before the trade for the car he did not know if the two drones "were valuable enough. I didn't know what they were worth."

Therefore, we conclude there is insufficient evidence to support a finding that when Jennings entered the hobby store he intended to trade the drone for property (i.e., an RC car or truck) worth more than $950.[6] (*People v. Vines*, *supra*, 51 Cal.4th at p. 869 [substantial evidence standard of review]; *People v. Killebrew*, *supra*, 103 Cal.App.4th at

---

[6] To the extent the People argue the prosecution had discretion whether to charge count 3 as a section 459 burglary or a section 459.5 shoplifting offense, that argument is irrelevant to the questions of whether the $950 value of the property Jennings allegedly intended to take is an element of the count 3 burglary charged in this case and whether there is substantial evidence to support a finding that that element was proved beyond a reasonable doubt. In any event, because the prosecution clearly lacked any evidence to prove that value element, it should have exercised its discretion to charge count 3 as a section 459.5 shoplifting offense and not a section 459 burglary. (*People v. Birks* (1998) 19 Cal.4th 108, 134 [regarding prosecution's charging discretion generally].)

14

p. 660 [same].) Because the prosecution did not prove that element of burglary and thereby disprove that Jennings committed section 459.5 shoplifting in the circumstances of this case, his count 3 burglary conviction must be reversed.

## III

### *Jury Instruction Error*

Jennings alternatively contends that if his count 3 burglary conviction is not reversed for insufficiency of evidence to support it, the trial court prejudicially erred by not instructing sua sponte on count 3 burglary that the prosecution had the burden to prove he intended to take property worth more than $950 when he entered the hobby store. Although we are not required to address this contention in light of our conclusion above that there is insufficient evidence to support Jennings's count 3 burglary conviction, we nevertheless elect to address this issue to provide trial courts with guidance in future similar cases.

## A

The trial court instructed the jury with the standard CALCRIM No. 1700 instruction on burglary, as follows:

> "The defendant is charged in Counts 1 through 5 with burglary, and count 6 with attempted burglary, in violation of Penal Code section 459.
>
> "To prove that the defendant is guilty of burglary, the People must prove that: [¶] 1. The defendant entered a building, room within a building, or structure; [¶] AND [¶] 2. When he entered a building, room within a building, or structure, he intended to commit theft.
>
> "To decide whether the defendant intended to commit theft, please refer to the separate instructions that I will give you on the crime.

15

"A burglary was committed if the defendant entered with the intent to commit theft. The defendant does not need to have actually committed theft as long as he entered with the intent to do so. The People do not have to prove that the defendant actually committed theft."

However, the court's instruction on count 3 burglary did *not* include the additional language recommended when the evidence in a case supports "a defense theory" that the crime was instead section 459.5 shoplifting. (Com. to CALCRIM No. 1700.) That omitted language would have added one of the following elements, or proof requirements, to the two general elements in the standard CALCRIM No. 1700 instruction:

"[AND] [¶] [3A. *The value of the property taken or intended to be taken was more than $950*](;/.)] [¶] [OR] [3B. The structure that the defendant entered was a noncommercial establishment(;/.)] [¶] [OR] [3C. The structure was a commercial establishment that the defendant entered during non-business hours.]" (CALCRIM No. 1700, italics added.)

In the circumstances of this case, the italicized language in paragraph 3A, quoted above, would have been the appropriate language for the trial court to add to correctly instruct the jury that the prosecution had the burden to prove the value of the property Jennings intended to take when he entered the hobby store exceeded $950.

B

"The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense. [Citation.] [Not instructing on the elements of a charged offense] is, indeed, very serious constitutional error because it threatens the right to a jury trial that both the United States and California Constitutions guarantee. (U.S. Const., 6th Amend.;

16

Cal. Const., art. I, § 16.) All criminal defendants have the right to 'a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." (*People v. Merritt* (2017) 2 Cal.5th 819, 824 (*Merritt*).)

Furthermore, "[i]t is settled that, even in the absence of a request, a trial court must instruct on general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case. [Citations.] The trial court is [also] charged with instructing upon every theory of the case supported by substantial evidence, including defenses that are not inconsistent with the defendant's theory of the case." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047 (*Montoya*).) Alternatively stated, "a trial court's duty to instruct, sua sponte, or on its own initiative, on particular defenses is more limited [than its duty to instruct on lesser included offenses], arising 'only if it appears that the defendant is relying on such a defense, or *if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case*.' " (*People v. Barton* (1995) 12 Cal.4th 186, 195, italics added (*Barton*).)

C

Jennings asserts that because the prosecution had the burden to disprove that he committed shoplifting to prove that he committed burglary in the circumstances of this case, the trial court erred by not sua sponte instructing with a modified version of CALCRIM No. 1700 that would have included paragraph 3A, quoted above, instructing the jury that the prosecution had the burden to prove beyond a reasonable doubt that the

17

value of the property he intended to take when he entered the commercial establishment (i.e., the hobby store) was more than $950. We agree.

As quoted in part I above, *E.P.* concluded: "Evidence the defendant committed shoplifting disproves the elements of the charged commercial burglary. Under these circumstances, the court must instruct the jury the prosecution has the burden to disprove the element(s) of shoplifting beyond a reasonable doubt to secure a burglary conviction." (*E.P.*, *supra*, 35 Cal.App.5th at p. 798.) Alternatively stated, to prove that a defendant committed section 459 burglary based on a theory of intent to commit larceny, "the prosecution [has] the burden of proving beyond a reasonable doubt that [the defendant] did not commit shoplifting." (*Id*. at p. 799.)

Furthermore, as we stated in part II(B) above, because section 459.5 shoplifting and section 459 burglary are separate and distinct offenses, when the prosecution has charged a defendant with section 459 burglary in circumstances involving entry of a commercial establishment with intent to commit larceny, the prosecution not only has the burden to prove each of the elements of section 459 burglary, but it also has the burden to disprove that the defendant committed section 459.5 shoplifting. (*E.P.*, *supra*, 35 Cal.App.5th at p. 799.) In particular, in such cases, the prosecutor must prove either: (1) the defendant did not enter the commercial establishment when it was open during regular business hours; or (2) the value of the property taken or intended to be taken exceeded $950. (§ 459.5, subd. (a); *E.P.*, at p. 801.) Accordingly, section 459.5, in effect, made the value of the property Jennings allegedly intended to take an element of section 459 burglary in this case and therefore the prosecution was required to prove

18

beyond a reasonable doubt that he intended to take property worth more than $950 when he entered the store.

Because we have concluded a finding that the value of the property Jennings intended to take when he entered the hobby store exceeded $950 is an element of section 459 burglary in the circumstances of this case, the court was required to sua sponte instruct on that element, along with the other elements of burglary. (*Merritt*, *supra*, 2 Cal.5th at p. 824.) In any event, assuming arguendo that the value of the property Jennings intended to take is not an element of the charged burglary offense, the court was nevertheless required to sua sponte instruct on that factual question as a "general principle[] of law that [was] commonly or closely and openly connected to the facts before the court and that [was] necessary for the jury's understanding of the case." (*Montoya*, *supra*, 7 Cal.4th at p. 1047.) Furthermore, to the extent the $950 value of the property Jennings intended to take was merely a defense to the burglary charge, the court nevertheless had a duty to sua sponte instruct on that shoplifting defense theory because it was supported by substantial evidence and not inconsistent with Jennings's theory of the case. (*Ibid*.; *Barton*, *supra*, 12 Cal.4th at p. 195; cf. *Mullaney v. Wilbur* (1975) 421 U.S. 684, 704 ["Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation"]; *People v. Banks* (1976) 67 Cal.App.3d 379, 384 [because "prosecution must prove beyond a reasonable doubt the absence of justification, herein self-defense," court erred by giving contrary instruction].) Because, as we concluded above, there is no substantial evidence to support a finding that Jennings intended to trade the drone for an RC car or truck worth more than $950, there

necessarily is substantial evidence to support a shoplifting theory (i.e., that the property

he intended to take was worth $950 or less). Also, the shoplifting theory was not

inconsistent with any defense theory presented by Jennings at trial. Based on our review

of the record, we conclude the shoplifting theory was consistent with Jennings's defense.

Therefore, under any of the above instructional principles, the trial court had a duty to sua

sponte instruct that the prosecution had the duty to prove beyond a reasonable doubt that

when Jennings entered the commercial establishment (i.e., the hobby store) he intended

to take property worth more than $950. Contrary to the People's assertion, because the

trial court had a sua sponte duty to give that instruction, Jennings was not required to

request that instruction and did not forfeit that instructional error by not requesting it.

(Cf. *People v. Mil* (2012) 53 Cal.4th 400, 409 (*Mil*) ["[I]t is well settled that no objection

is required to preserve a claim for appellate review that the jury instructions omitted an

essential element of the charge."].)

D

We further conclude, as Jennings asserts, that the trial court's instructional error

was prejudicial and requires reversal of his count 3 burglary conviction. "Not instructing

on [the] elements of [an offense] is constitutional error." (*Merritt*, *supra*, 2 Cal.5th at p.

824.) "[T]he omission of one or more elements of a charged offense . . . is amenable to

review for harmless error under the state and federal Constitutions . . . ." (*Mil*, *supra*, 53

Cal.4th at p. 415.) "A trial court's failure to instruct the jury on all of the essential

elements of the charged offense is reviewed for harmless error according to the standard

set out in *Chapman v. California* (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705

20

(*Chapman*)." (*People v. Atkins* (2019) 31 Cal.App.5th 963, 980-981 (*Atkins*).) Under the *Chapman* standard, an error is prejudicial and requires reversal of the conviction unless it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman*, at p. 24.) Accordingly, the error "will be deemed harmless only in unusual circumstances, such as where each element was undisputed, the defense was not prevented from contesting any [or all] of the omitted elements, *and* overwhelming evidence supports the omitted element." (*Merritt*, *supra*, 2 Cal.5th at p. 828, italics added.) Alternatively stated, we must review the record to determine whether it contains evidence that could rationally lead to a contrary finding with respect to the omitted element. (*Mil*, at p. 417.)

Based on our review of the record in this case, we cannot conclude the court's instructional error was harmless beyond a reasonable doubt. (*Chapman*, *supra*, 386 U.S. at p. 24.) As discussed above, there was no evidence presented on the value of the property (i.e., an RC car or truck) that Jennings allegedly intended to take on his entry into the hobby store. Therefore, there was *no* evidence, much less "overwhelming evidence," to support a finding that he intended to take property worth more than $950 when he entered the store. (*Merritt*, *supra*, 2 Cal.5th at p. 828.) Likewise, because neither the prosecution nor the court informed Jennings that the property's $950 value was an element of the burglary alleged in count 3, he presumably was not, as a self-represented defendant, aware of that element. Therefore, that element cannot be deemed to have been "undisputed" by him, nor can we conclude he "was not prevented from contesting [that] omitted element[]." (*Ibid*.) Furthermore, because there was no evidence

21

that the property Jennings allegedly intended to take on his entry into the store was worth more than $950, the record would support a rational finding that the omitted element was not shown beyond a reasonable doubt (i.e., a finding that the property was worth $950 or less). (*Mil*, *supra*, 53 Cal.4th at p. 417.) Accordingly, the court's error in omitting an essential element on the burglary charged in count 3 was not harmless beyond a reasonable doubt and therefore requires reversal of Jennings's conviction on count 3. (*Chapman*, at p. 24; *Atkins*, *supra*, 31 Cal.App.5th at pp. 980-981.)

Assuming arguendo that the court's instructional error did not involve the omission of an element of the charged burglary offense and instead involved only a failure to sua sponte instruct on a general principle of law commonly or closely and openly connected to the facts before the court and necessary for the jury's understanding of the case (*Montoya*, *supra*, 7 Cal.4th at p. 1047) or a failure to sua sponte instruct on the shoplifting defense theory (*ibid*.), we nevertheless conclude that error was prejudicial under either the *Chapman* standard, discussed above, or under the more lenient state standard for harmless error under *People v. Watson* (1956) 46 Cal.2d 818, 836. Under the *Watson* standard, an error is deemed harmless if it is not reasonably probable the defendant would have obtained a more favorable result in the absence of the error. (*Ibid*.) However, because our review of the record shows there is no evidence to support a reasonable finding that the value of the property Jennings allegedly intended to take on his entry into the hobby store was worth more than $950, the court's error in omitting that general principle of law or defense theory from its instructions on count 3 burglary was prejudicial under the *Watson* standard (i.e., it is reasonably probable he would have

22

obtained a more favorable verdict on count 3 had the court correctly instructed on that count). (*Watson*, at p. 836.) Furthermore, because of the absence of evidence that the property he allegedly intended to take (i.e., an RC car or truck) was worth more than $950, we likewise conclude that instructional error was also prejudicial under the *Chapman* standard. (*Chapman*, *supra*, 386 U.S. at p. 24.) Accordingly, regardless of the classification of the court's instructional error, that error was prejudicial under both the *Chapman* and *Watson* standards and therefore Jennings's conviction on count 3 must be reversed. (*Chapman*, at p. 24; *Watson*, at p. 836.)

IV

*Senate Bill No. 136*

In his supplemental letter brief, Jennings contends, and the People agree, that Senate Bill No. 136, which was enacted on October 8, 2019, and becomes effective on January 1, 2020, applies retroactively to his case pursuant to the *Estrada* rule. We agree.

A

Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years. (§ 667.5, subd. (b).) Courts nevertheless had discretion to strike that enhancement pursuant to section 1385, subdivision (a). (*People v. Bradley* (1998) 64 Cal.App.4th 386, 392-395.) Effective as of January 1, 2020, Senate Bill No. 136 amends section 667.5, subdivision (b) to limit its prior prison term enhancement to only prior prison terms for sexually violent offenses, as defined in Welfare and Institutions Code

23

section 6600, subdivision (b).  (Sen. Bill No. 136, § 1; Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a); *People v. Camba* (1996) 50 Cal.App.4th 857, 865 [statute enacted at regular session of Legislature generally becomes effective on January 1 of year following its enactment].)

B

In *Estrada*, the California Supreme Court held that a statute that reduces the punishment for an offense will generally apply retroactively to any case in which the judgment is not yet final before the effective date of the statute.  (*Estrada*, *supra*, 63 Cal.2d at pp. 742, 744-745.)  *Estrada* stated:  "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act.  It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.  The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final."  (*Id*. at p. 745.)  *Estrada* stated:  "[W]here the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed."  (*Estrada*, at p. 748; see *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1195.)  "*Estrada* represents 'an important, contextually specific qualification to the ordinary presumption that statutes operate prospectively:  When the Legislature has amended a statute to reduce the punishment for a particular criminal

24

offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date.' " (*People v. Hajek and Vo*, at pp. 1195-1196.) The *Estrada* rule also applies to statutory amendments reducing the penalty for, or allowing a court to strike, an enhancement. (Cf. *People v. Jones* (2019) 32 Cal.App.5th 267, 272-273; *People v. Valenzuela* (2018) 23 Cal.App.5th 82, 87-88; *People v. Chavez* (2018) 22 Cal.App.5th 663, 708-712.) For purposes of the *Estrada* rule, a judgment is not final so long as courts may provide a remedy on direct review. (*In re Pine* (1977) 66 Cal.App.3d 593, 594.)

C

By eliminating section 667.5, subdivision (b) enhancements for all prior prison terms except those for sexually violent offenses, the Legislature clearly expressed its intent in Senate Bill No. 136 to reduce or mitigate the punishment for prior prison terms for offenses other than sexually violent offenses. (Cf. *Estrada*, *supra*, 63 Cal.2d at pp. 742, 744-745.) Therefore, we conclude, and the parties agree, that under the *Estrada* rule, Senate Bill No. 136's amendment to section 667.5, subdivision (b) applies retroactively to all cases not yet final as of its January 1, 2020, effective date. Because Jennings's case will not be final as of that date, he is entitled to the ameliorative benefit of Senate Bill No. 136's amendment to section 667.5, subdivision (b). Therefore, we reverse the one-year section 667.5, subdivision (b) prior prison term enhancement, which the court imposed and executed for a prior prison term for an offense other than a sexually violent offense.

Because we reverse Jennings's count 3 conviction and his one-year section 667.5, subdivision (b) prior prison term enhancement, we remand the matter for resentencing to allow the court to exercise its sentencing discretion in light of the changed circumstances. (Cf. *People v. Buycks* (2018) 5 Cal.5th 857, 893.)  We take no position on how the court should exercise its discretion on remand.

## DISPOSITION

The defendant's burglary conviction on count 3 and one-year section 667.5, subdivision (b), prior prison term enhancement are reversed.  In all other respects, the judgment is affirmed.  The matter is remanded for resentencing consistent with this opinion.

HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


GUERRERO, J.

26