Filed 10/30/20  P. v. Smith CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>REMONE LEE SMITH,<br><br>    Defendant and Appellant. | B301801<br><br>(Los Angeles County<br>Super. Ct. No. SA061191) |

APPEAL from an order of the Superior Court of Los Angeles County, Kathryn A. Solorzano, Judge.  Affirmed.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles Lee and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Remone Lee Smith challenges on appeal the trial court's denial of his petition for resentencing under Penal Code section 1170.95,[1] which was enacted to implement changes in the murder laws made by Senate Bill No. 1437. (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 249.)

Section 1170.95 affords a procedural vehicle for a defendant to challenge retroactively a murder conviction that rests on a theory of murder is no longer valid. If petitioner makes a prima facie showing that he is entitled to relief under the statute, then the trial court "shall issue an order to show cause." (§ 1170.95, subd. (c).)

Here, the trial court concluded that Smith had not established a prima facie showing of entitlement to relief because Smith pleaded guilty to voluntary manslaughter, a crime not contemplated by the express and unambiguous language of section 1170.95. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Smith filed a habeas corpus petition, which the trial court construed as a petition for resentencing pursuant to Senate Bill No. 1437 and section 1170.95. The parties stipulated to the following facts:

"On June 5, 2006, during a class break, some female students got into a fight at Venice High School. The brother of one of the fighters saw his sister fighting, so he broke up the fight. One of the fight's participants then threatened to have the brother beaten up for interfering with the fight.

---

[1] Subsequent statutory references are to the Penal Code.

"Later that same day, gang members of the Venice Shoreline Crips ( . . . Smith, [codefendant] Cymone Turner, [codefendant] Wayman Thompson, and one unknown person) all went to Venice High School to beat up the person who had broken up the fight. However, before finding this person, they approached a different student on the school grounds. One of the gang members attempted to take the student's jewelry. When the victim resisted, one of the gang members stated 'Venice Shoreline Crips.' Another one of the gang members then punched the victim, and a fight between all of the gang members, the victim, the victim's brother, and the victim's friend then ensued. One of the gang members cut the victim with a knife, and the victim began to bleed profusely.

"The school bell then ran, and classes let out. Somebody yelled, 'Security!' and the gang members began to run away while all yelling, 'Shoreline!' Another brother of the victim came out of class and saw that the victim was bleeding, so he chased the gang members. One of the gang members pulled a gun from a backpack that another of the gang members had given him earlier. One of the gang members yelled[,] 'Shoot him! Shoot him[!]' and the gang member who pulled the gun from the backpack shot and killed the brother in the school's parking lot.

"On May 30, 2009, ( . . . Smith, [codefendant] Cymone Turner, and [codefendant] Wayman Thompson[ ] all pleaded no contest to Voluntary Manslaughter [citation] and Grand Theft Person [citation]. They all also admitted the Street Gang Allegation [citation] and the Principal Armed Allegation [citation]. All of them were sentenced to 17 years 8 months in state prison."

The prosecution asserted in opposition to the petition that Smith was charged with murder (§ 187, subd. (a)), attempted robbery (§§ 211, 664), voluntary manslaughter (§ 192, subd. (a)), and grand theft (§ 487, subd. (c)).  Smith pleaded no contest to voluntary manslaughter and grand theft and admitted a gang allegation (§ 186.22, subd. (b)(1)(C)) and a firearm allegation (§ 12022, subd. (a)(1)).  The trial court sentenced Smith to 17 years 8 months in state prison.

The trial court denied Smith's petition for resentencing, finding he was ineligible for resentencing because there was "no ambiguity" that section 1170.95 applied only to murder and not manslaughter.  The trial court opined that the result was "inconsistent with the intent of the statute" and expressed an opinion that "fairness" dictated the statute should apply to manslaughter.

Smith timely appealed the denial.

## DISCUSSION

Smith does not disagree with the court's treatment of the habeas corpus petition as a petition under section 1170.95 and concedes that section 1170.95, as written, applies only to murder convictions.  He further acknowledges that reviewing courts have consistently denied relief under section 1170.95 to defendants convicted of manslaughter.  He nonetheless urges us to reverse the denial of his petition for resentencing on the ground the trial court made a "factual finding of absolute unfairness," and that our de novo review of his petition should not only reach the same conclusion, but compel a different result.

4

## A.   *Legal Standards*

Where a question of statutory interpretation based on undisputed facts is presented, we conduct an independent review of the statute in question.  (*People v. Tran* (2015) 61 Cal.4th 1160, 1166.)  "In doing so, ' "our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " ' "  (*Ibid*.)  "We begin by examining the words of the statute, affording them ' " 'their ordinary and usual meaning and viewing them in their statutory context' " ' [citation], for ' "if the statutory language is not ambiguous, then . . . the plain meaning of the language governs." ' [Citation.]"  (*People v. Colbert* (2019) 6 Cal.5th 596, 603.)  "We . . . must, if possible without doing violence to the language and spirit of the law, interpret it so as to harmonize and give effect to all its provisions."  (*People v. Garcia* (1999) 21 Cal.4th 1, 14.)

We turn to extrinsic aids to assist in our interpretation "when the statute's language is ambiguous or susceptible of more than one reasonable interpretation."  (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.)  Extrinsic interpretive aids "include the ostensible objects to be achieved and the legislative history."  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1369)  " ' "Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute.  [Citations.]" ' [Citation.]"  (*Ibid*.)

## B.   *Analysis*

The relevant portion of section 1170.95, subdivision (a) provides:  "A person *convicted of felony murder or murder under a natural and probable consequences theory* may file a petition with the court that sentenced the petitioner to have the

petitioner's *murder conviction* vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

"(2)  The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.

"(3)  The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a), italics added.)

Courts have repeatedly rejected the argument that section 1170.95 applies to voluntary manslaughter convictions. As the Fourth Appellate District observed earlier this year in *People v. Turner* (2020) 45 Cal.App.5th 428 (*Turner*), courts "[r]elying on the clear language of [section 1170.95], . . . have concluded that section 1170.95 is unambiguous and does not provide relief to persons convicted of manslaughter." (*Turner*, *supra*, at pp. 435–435.)

In reaching its decision, the *Turner* court examined the full history of section 1170.95 and described it in its opinion that makes plain the Legislature's focus on reforming liability for murder and not for any other crime.  After discussing at length the history of the Legislature's attempt to reform the law " 'to limit convictions and subsequent sentencing in both felony murder cases and aider and abettor matters prosecuted under [the] "natural and probable consequences" doctrine,' " to mitigate "the harsh sentences for persons convicted of first and

6

second degree murder" and to recognize the "less culpable mental states for liability based on felony murder and natural and probable consequences murder" (*Turner*, *supra*, 45 Cal.App.5th at p. 436), the court drew "a few broad points from this detailed history.  First, the Legislature understood the distinction between murder and manslaughter and focused its efforts on revising accomplice liability under a felony murder or natural and probable consequences theory.  Second, nearly every committee report and analysis made note of the life sentences imposed for defendants convicted of first or second degree murder.  One report based cost estimates on the number of inmates serving terms for first or second degree murder.  Finally, the petitioning procedure was *restricted* by amendment to apply to persons convicted of felony murder or murder under a natural and probable consequences theory.  Viewed together, the legislative history confirms that a defendant who faces murder liability under the natural and probable consequences doctrine, but pleads guilty to manslaughter in lieu of trial, is not eligible for resentencing under section 1170.95." (*Turner*, *supra*, at p. 438.)

Smith argues that interpreting section 1170.95 to not extend to voluntary manslaughter is inconsistent with the intent of the Legislature and would produce absurd consequences. *Turner* soundly rejected this contention as well.  " 'Courts may, of course, disregard even plain language which leads to absurd results or contravenes clear evidence of a contrary legislative intent.' [Citation.]  But our interpretation does neither.  The uncodified legislative declarations and findings in Senate Bill [No.] 1437 make repeated references to 'murder,' underscoring the need to amend the natural and probable consequences

doctrine 'as it relates to murder,' but include no references to manslaughter. The petitioning prerequisites and available relief all presuppose a murder conviction. And the legislative history underscores that the Legislature did not intend to extend relief to persons like [petitioner], who were convicted of manslaughter by plea." (*Turner*, *supra*, 45 Cal.App.5th at pp. 438–439.)

"Nor does our construction produce absurdity by undermining the Legislature's goal to calibrate punishment to culpability. The punishment for manslaughter is already less than that imposed for first or second degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter . . . permit a sentencing judge to make punishment commensurate with a defendant's culpability based on aggravating and mitigating factors. [Citations.] Providing relief solely to defendants convicted of murder under a felony-murder or natural and probable consequences theory does not conflict with the Legislature's stated objective to make 'statutory changes to more equitably sentence offenders in accordance with their involvement in homicides.' (Stats. 2018, ch. 1015, § 1[(b)].)" (*Turner*, *supra*, 45 Cal.App.5th at pp. 438–439, italics omitted.)

In short, the argument Smith makes to this court is not a novel one. We agree with our colleagues at the Fourth Appellate District that defendants charged with felony murder but convicted of voluntary manslaughter pursuant to a plea agreement are not eligible for relief under section 1170.95. Smith's contention to the contrary is without merit.

## DISPOSITION

The order denying Smith's petition for resentencing is affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.

9