Filed 5/3/22  P. v. Aguirremariano CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E076194 & E076434 |
| v. | (Super. Ct. Nos. FWV1400545, ACRAS20000070 & MWV802368) |
| VICTOR MANUEL AGUIRREMARIANO, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Shahla S. Sabet, Judge.  Affirmed.

Jason Anderson, District Attorney, and John A. Slezak, Deputy District Attorney, for Plaintiff and Appellant.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Respondent.

1

# I.

# INTRODUCTION

The People appeal from the trial court's order granting defendant and appellant Victor Manuel Aguirremariano's Penal Code section 1473.7[1] motions to vacate his guilty pleas and convictions in case Nos. MWV802368 and FWV1400545.[2] The People argue the trial court erred by granting defendant's motions because he had not met the requirements entitling him to relief and he was correctly informed of his immigration consequences. The People also claim defendant failed to show any prejudicial error, with contemporaneous objective evidence, resulting in a legal invalidity of his 2008 or 2014 drug convictions as required under section 1473.7, subdivision (a)(1). The People also argue that the trial court's interpretation of section 1473.7, subdivision (e)(2) to presume the invalidity of defendant's 2008 and 2014 pleas and convictions, without any showing of error or prejudice, is contrary with the presumption of correctness of superior court orders. The People further contend the court's dismissals of defendant's convictions were without notice or hearing, without jurisdiction because they were after judgment, and without valid legal reasons under section 1385. We conclude the trial court did not err in granting defendant's motions to vacate his pleas and convictions and dismiss the cases in the interest of justice. We thus affirm the orders.

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

[2] Case Nos. E076194 and E076434 have been consolidated.

## II.

## FACTUAL AND PROCEDURAL HISTORY[3]

A. *General Background*

Defendant is a citizen of Mexico.  He entered the United States illegally in 1991 at the age of five with his mother.  In 2000, defendant received lawful permanent resident status, a green card.  His green card does not expire until 2027.  Defendant has two children, a stepdaughter, and a fiancé who are all citizens of the United States.  Defendant had struggled with drug addiction, but for the last seven years had been gainfully employed.

B. *Case No. MWV802368*

On February 9, 2008, during a traffic stop, defendant was found in possession of methamphetamine and drug paraphernalia.

On March 25, 2008, defendant was charged with misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377 subd. (a)) and misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364 subd. (a)).

On May 20, 2008, defendant pleaded guilty to both counts.  In return, he was placed on probation for a period of 24 months on various terms and conditions of probation, including completing a drug treatment program under Proposition 36.  Prior to pleading guilty, defendant signed and initialed a plea agreement form, which included the

---

[3] The general background is taken from defendant's declaration and other exhibits in support of his motion to vacate his guilty pleas.

3

provision that: "If I am not a citizen and I am a lawful resident alien, a plea of guilty or nolo contendere *may* result in my deportation, my exclusion from admission to the United States, or denial of naturalization under the laws of the United States." Following defendant's plea, the trial court found that defendant understood the charges and the consequences of his plea and admission.

On November 23, 2009, the trial court found that defendant had successfully completed his Proposition 36 drug treatment program.

C. *Case No. FWV1400545*

On February 14, 2014, defendant was charged with felony possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)). On March 26, 2014, defendant pleaded guilty to the offense. In return, he was placed on probation for a period of 36 months on various terms and conditions, including to enroll in and complete a drug treatment program pursuant to Proposition 36.

Before pleading guilty, defendant signed and initialed a plea form, which included the provision that stated: "I understand. . . if I am not a citizen of the United States, deportation, exclusion from future admission to the United States, or denial of naturalization *will* result from a conviction of the offense to which I plead guilty/no contest." Defendant also initialed the provision that stated: "I have personally placed my initials in certain boxes on this Declaration to signify that I fully understand and adopt as my own each of the statements which correspond to those boxes." Following defendant's plea, the trial court found that defendant read and understood his plea form, the nature of

4

the charges, and the consequences of pleading guilty. The court also found that defendant knowingly and freely entered his plea of guilty.

On August 12, 2015, the trial court granted defendant's motion to reduce the offense to a misdemeanor pursuant to section 1170.18. Because defendant had completed his Proposition 36 drug program, the court also terminated defendant's probation pursuant to section 1203.3, and granted his motion to set aside the conviction and dismissed the case pursuant to sections 1203.4, 1203.4A and 1203.41.

D. *Motions to Vacate Convictions*

Due to his drug convictions, in November 2015, as he returned to the United States from Mexico, defendant was detained by immigration authorities and his green card was confiscated. Defendant is currently in immigration removal proceedings. Defendant's drug convictions render him removable from the United States under 8 U.S.C. § 1227(a)(2)(B) and inadmissible to the United States under 8 U.S.C. § 1182(a)(2)(A)(i)(II).

On June 18, 2020, defendant filed motions to vacate his guilty pleas and convictions under section 1473.7, with numerous exhibits in support, based on the ground that he failed to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of his guilty pleas and convictions. In pertinent part, defendant alleged that he believed his cases would be dismissed for all purposes, including for immigration purposes, once he had completed his Proposition 36 drug treatment programs.

5

On July 2, 2020, the People filed oppositions to defendant's motions to vacate, requesting the court deny the motions. The People asserted that defendant was aware his convictions would result in adverse immigration consequences and that defendant was not prejudiced by any deficiency in the court or his counsel's performance. The People further argued that defendant failed to prove prejudicial error, the presumption of invalidity found in section 1473.7, subdivisions (e)(2) is unconstitutional, and defendant's request for dismissal – rather than vacation and retrial – of his convictions under section 1385 is without valid legal reason.

A hearing on the motions was held on October 28, 2020. The trial court noted that "by the nature of the fact that [defendant] was placed on Prop 36, there is a presumption" and "therefore the presumption is that the immigration consequences were unclear as to the consequences after the case was dismissed." The court then heard argument from the People, noting the "burden is on the People to prove . . . there was no actual prejudice."

The People argued the record in the 2014 felony conviction for possession of a controlled substance showed that defendant had reviewed and signed the plea form under section 859, subdivision (b), which advised him his plea and conviction "will result" in deportation, exclusion or denial of naturalization to the U.S. The People further asserted that defendant had made no showing of any prejudicial error causing any invalidity of his 2008 and 2014 pleas and convictions, as required to justify a motion under section 1473.7, subdivision (a)(1). The People also contended that the court's purported presumption of the invalidity in accepting defendant's guilty pleas without any showing

6

of error is contrary with the presumption of correctness of the superior court's orders under the California Constitution, Article VI, section 13, which dictates affirmance of superior court orders absent a miscarriage of justice.

Defense counsel clarified that the motions were not brought under section 1016.5 and that there were no issues concerning the trial court's advisements or ineffective assistance of counsel, but whether defendant was promised the convictions would be dismissed for "all purposes," including for immigration consequences, once defendant had completed his Proposition 36 drug program. Counsel explained that defendants are routinely informed that once they successfully complete a Proposition 36 drug program, they "will not have a conviction" and that this was "the misinformation" and "confusion," which prompted the enactment of section 1473.7, subdivision (e)(2).

The trial court thereafter heard testimony from defendant. In pertinent part, defendant testified that when he pleaded guilty to the charges, he believed that if he completed a drug program under Proposition 36, his cases would "go away." He thought his cases would be dismissed "for all purposes," including immigration, and that neither his counsel nor the court informed him that "everything will go away except immigration consequences." Defendant explained that the immigration consequences were important to him and understood that if he had completed his drug program, the case would be dismissed. He stated that he had been told that he would not have to worry about "anything," if he successfully completed Proposition 36 probation. Defense counsel stipulated that defendant had signed and initialed the plea forms and that he had

7

specifically initialed the immigration consequences provision. Defendant acknowledged that he had read, initialed, signed, and understood the plea form, that his counsel explained the contents of the plea form, and that he had been advised of his constitutional rights.

Following argument, the trial court granted defendant's motions to vacate his 2008 and 2014 convictions, and dismissed the cases pursuant to section 1385. The court explained that this was an unusual case because defendant's pleas and convictions had been vacated and set aside and defendant had understood that if he had successfully completed Proposition 36 probation, the cases would be dismissed. The court noted, "What was he told? And that is why I asked him two, three times, anybody ever told him something to distinguish and separate immigration consequences from all other consequences. [¶] And based on that fact, I have a factual basis now to find that there was prejudice to the defendant. And the error is inherent in the statute. It doesn't have to be a judicial error. It is just [section] 1473.7 says there is a presumption. If everything, conviction had to be set aside as a result of a program that the defendant completed." The court concluded that "defendant was never told that everything will go away except his immigration [consequences]" and found that "he knowingly, intelligently, freely and voluntarily signed the plea bargain; that if he did not complete Prop 36, he will be deported."

On November 10, 2020, the People filed motions for reconsideration in both cases. The People claimed section 1473.7, subdivision (e)(2) is unconstitutional, defendant failed to show any prejudicial error causing legal invalidity of his 2008 and 2014 convictions, the court incorrectly dismissed the cases under section 1385 without any notice or opportunity to be heard, the court had no jurisdiction to dismiss the cases, and dismissal was not in the interest of justice.

The trial court heard the People's motions on November 30, 2020. Following argument, the court denied the People's motions. In denying the motions, the court found section 1473.7, subdivision (e)(2) to be constitutional "because it addresses specifically an area of law which has conflicting results." The court explained, "On one law, it says if you complete the program, everything is going away, . . . including immigration consequences. And the other statute says everything will go away except immigration." The court noted that the Supreme Court would need to resolve the issue.

As to the dismissal issue, the court stated it had not clearly articulated its factual basis and reasons for dismissal under both sections 1385 and 1473.7. The court then explained its reasons for dismissal as follows: "I am using both of those statutes to dismiss the charges, as I did before, and I did again affirm what I make the ruling on, but I make it more clear. [¶] Frankly, it's almost, if I can analogize it, it is almost like double jeopardy. . . . [¶] He pled, he got something in exchange. That was Prop 36 or PC 1000. He completed the program. The case was dismissed. Everything was set aside. Conviction was set aside. Case dismissed. [¶] Frankly, these cases are already

9

dismissed under those statutes. But because I am reviving everything and bringing it back, then that dismissal is also going to be set aside. [¶] So what is the ground and the reason for dismissal again? If I look at the interest of society in prosecuting these cases at this time, frankly I find the reason zero, below zero. [¶] He is an upstanding, upright citizen right now with no convictions. And he has not done anything to warrant for the society to proceed, once again, prosecuting him on a drug case which these days, the D.A.s don't even ask for anything. Credit for time served and a conviction on the paper. [¶] Let's assume that there is also some interest for prosecution to prosecute these cases on the basis of principle because they don't want the floodgate to open. I have to compare that with the right of his rights, constitutional rights. And as I said, I analogize this to double jeopardy. He has already been tried. He has already paid his dues and he already did what the society and the D.A.'s office told him to do. [¶] And then we want to pull all of it aside and start again. If that is not a serious factor in the interest of justice to give justice to individuals who meet their end of the bargain, I don't know what is. That alone is also a factor that I will consider. And the consideration is also under, not only under [section] 1385, I find that there is sufficient factors to warrant in interest of justice to dismiss the charges. I also find under [section] 1473.7 . . . that he is entitled to that dismissal even though the statute doesn't mention the word dismissal. [¶] . . . [¶] At this point, other than waste of taxpayer's money, I don't see any other benefit in not dismissing the case and allowing it to proceed in the Superior Court. The issues that the D.A.'s interest at this point . . . are legal issues and the interpretation of statutes. [¶]

10

Take them up [to the Court of Appeals]. But to relitigate these cases, under [section] 1385, I specifically find under facts of this case, the testimony I received, the arguments I heard, there is more than enough factors to justify a dismissal for the interest of justice."

The People timely appealed both cases, which we consolidated on appeal.

III.

DISCUSSION

The People argue the trial court erred in granting defendant's section 1473.7 motions to vacate his 2008 and 2014 guilty pleas and convictions because defendant was correctly informed of his immigration consequences under sections 1016.5 and 1473.7.[4] The People also assert defendant failed to prove any prejudicial error causing invalidity of his pleas and convictions and that there was no evidence supporting the trial court's findings because defendant did not show with contemporaneous objective evidence that he was prejudiced. The People fault the trial court with relying on the presumption of invalidity under section 1473.7, subdivision (e)(2), without any showing of error or prejudice, because the presumption is contrary to the presumption of correctness of superior court orders under the California Constitution article VI, section 13. Finally, the People assert the trial court erred in dismissing defendant's cases under section 1385 because they were not provided with notice or opportunity to be heard, the court failed to state its reasons in dismissing the cases as required by section 1385, and dismissal was

---

[4] Because defendant made no claim concerning section 1016.5 and the trial court did not rule on defendant's motions under section 1016.5, we will not address any arguments related to this section.

11

not in the interest of justice.

A. *Standard of Review*

Our Supreme Court recently clarified the standard of review for motions brought pursuant to section 1473.7, subdivision (a)(1). In *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), the Supreme Court endorsed the independent standard of review to determinations under section 1473.7, subdivision (a)(1). (*Vivar*, *supra*, at pp. 523-525.) "A standard of independent review—the same standard governing our review of these claims on habeas corpus—is most consistent with section 1473.7's purpose: to offer relief to those persons who suffered 'prejudicial error' but are 'no longer imprisoned or restrained' and for that reason alone are unable to pursue relief on habeas corpus. [Citation.]" (*Id.* at p. 525.) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that "'[i]ndependent review is not the equivalent of de novo review . . . ."' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. [Citations.]" (*Id.* at p. 527, italics omitted.) In other words, we should give particular deference to factual findings based on the trial court's personal observations of witnesses. (*Id.* at pp. 527-528.) Where "the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written

12

declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*. at p. 528.)

The construction and interpretation of a statute is a question of law that we consider de novo on appeal. (*John v. Superior Court* (2016) 63 Cal.4th 91, 95-96.) We begin by examining the plain, ordinary words of the statute as an indicator of legislative intent, and if the statutory language is clear and unambiguous, we do not indulge in further statutory construction. (*People v. Colbert* (2019) 6 Cal.5th 596, 603.) We do not, however, consider the statutory language in isolation, and must harmonize "'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.'" [Citation.]" (*People v. Mejia* (2019) 36 Cal.App.5th 859, 866 (*Mejia*).) "Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation." (*Murphy v. Kenneth Cole Productions, Inc*. (2007) 40 Cal.4th 1094, 1103.)

B. *Section 1473.7*

Former section 1473.7, which became effective on January 1, 2017, allowed "[a] person no longer imprisoned or restrained" to file a motion to vacate a conviction or sentence if "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of

13

guilty or nolo contendere." (Stats. 2016, ch. 739, § 1.) "Courts routinely interpreted the new statute to mean that in order to vacate a conviction, a person had to prove an ineffective assistance of counsel (IAC) claim under well-established standards. (*Strickland v. Washington* (1984) 466 U.S. 668." (*Mejia*, *supra*, 36 Cal.App.5th at p. 861; *People v. Camacho* (2019) 32 Cal.App.5th 998, 1005 (*Camacho*).)

The Legislature, however, amended the statute, effective January 1, 2019, "to provide clarification to the courts regarding section 1473.7 of the Penal Code to ensure uniformity throughout the state and efficiency in the statute's implementation." (Stats. 2018, ch. 825, § 1, subd. (b); *Camacho*, *supra*, 32 Cal.App.5th at p. 1007; *Mejia*, *supra*, 36 Cal.App.5th at p. 869.) Of significance, a sentence was added to subdivision (a)(1) stating, "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (Stats. 2018, ch. 525, § 2; *Mejia*, *supra*, at pp. 862, 869; *Camacho*, *supra*, at p. 1006; see *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133.)

Moreover, effective January 1, 2019, section 1473.7 was amended to impose a presumption of legal invalidity for pleas made pursuant to certain qualifying statutes. Subdivision (e)(2) explicitly states, "There is a presumption of legal invalidity for the purposes of paragraph (1) of subdivision (a) *if the moving party pleaded guilty or nolo contendere pursuant to a statute that provided that, upon completion of specific requirements, the arrest and conviction shall be deemed never to have occurred*, where the moving party complied with these requirements, and where the disposition under the statute has been, or potentially could be, used as a basis for adverse immigration

14

consequences." (§ 1473.7, subd. (e)(2), as amended by Stats. 2018, ch. 825, § 2, italics added.)

Assuming no presumption of legal invalidity applies, a court must grant the section 1473.7 motion "if the moving party establishes, by a preponderance of the evidence," the grounds for relief under subdivision (a)(1). (§ 1473.7, subd. (e)(1).) The only finding required under subdivision (a)(1) is "whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (e)(4), as amended by Stats. 2018, ch. 825, § 2.)

Under the amended section 1473.7, a defendant is no longer required to prove an ineffective assistance of counsel claim in order to obtain relief. (*Mejia*, *supra*, 36 Cal.App.5th at p. 871; *Camacho*, *supra*, 32 Cal.App.5th at p. 1008.) Thus, a defendant no longer must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. (*Camacho*, *supra*, at p. 1008.) This means too that courts are not limited to the standard for prejudice used in ineffective assistance of counsel claims—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694)—when ruling on motions brought under section 1473.7. (*Camacho*, *supra*, at p. 1009.) The People, therefore, incorrectly argue that defendant was required to show ineffective assistance of counsel.

15

"Rather, [assuming no presumption of legal invalidity] a superior court is required to make a finding of legal invalidity if the defendant simply proves by a preponderance of the evidence a 'prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.' (§ 1473.7, subd. (a)(1).)" (*Mejia*, *supra*, 36 Cal.App.5th at p. 871, italics omitted.) "[T]he focus of the inquiry in a section 1473.7 motion is on the 'defendant's own error in . . . not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.' [Citation.]" (*Mejia*, *supra*, at p. 871, italics omitted, quoting *Camacho*, *supra*, 32 Cal.App.5th at p. 1009.)

As our Supreme Court recently explained, prejudicial error "means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, *supra*, 11 Cal.5th at pp. 529-530.) "[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences," he or she must corroborate "such assertions with '"objective evidence."'" (*Id*. at p. 530.)

16

"The probability of obtaining a more favorable result at trial is one factor to consider in evaluating prejudice, but it is not necessarily the determinative factor." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78; *People v. Martinez* (2013) 57 Cal.4th 555, 559 (*Martinez*).)  As the United States Supreme Court explained in *Jae Lee v. United States* (2017) 582 U.S. __ [137 S.Ct. 1958, 1967], "it could be reasonably probable that a defendant 'would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at trial,' where 'avoiding deportation was the determinative factor for [the defendant].'" (*People v. Ogunmowo*, *supra*, at p. 78, italics omitted; accord, *Mejia*, *supra*, 36 Cal.App.5th at p. 871; *Camacho*, *supra*, 32 Cal.App.5th at pp. 1010-1011.)  "'[C]ommon sense . . . recognizes that there is more to consider than simply the likelihood of success at trial.  The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea.  [Citation.]  When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive.'  ([*Jae*] *Lee v. United States*, *supra*, [582] U.S. __ [137 S.Ct. at p. 1966].)" (*Mejia*, *supra*, at p. 872; *Camacho*, at pp. 1010-1011.)

As *Camacho* discussed, our Supreme Court has found that "'"[c]riminal convictions may have 'dire consequences' under federal immigration law [citation] and that such consequences are 'material matters' [citation] for noncitizen defendants faced with pleading decisions." [Citation.]  "[A] deported alien who cannot return 'loses his job, his friends, his home, and maybe even his children, who must choose between their

17

[parent] and their native country . . . .'" [Citation.]  Indeed, a defendant "may view immigration consequences as the only ones that could affect his calculations regarding the advisability of pleading guilty to criminal charges" [citation], such as when the defendant has family residing legally in the United States.'"  (*Camacho*, *supra*, 32 Cal.App.5th at p. 1010, quoting *Martinez*, *supra*, 57 Cal.4th at p. 563.)

C.  *Presumption of Legal Invalidity Analysis*

Here, there is no dispute that defendant was placed on Proposition 36 probation in both of his cases.  Indeed, both of defendant's plea agreements specifically refer to Proposition 36.  In November 2009, the court found that defendant had successfully completed his Proposition 36 drug treatment program for his 2008 misdemeanor drug convictions in case No. MWV802368.  In August 2015, the court granted defendant's motion to reduce his felony drug possession offense in case No. FWV1400545 to a misdemeanor pursuant to section 1170.18, and also granted his motion to set aside the conviction and dismissed the case pursuant to sections 1203.4, 1203.4A and 1203.41 since defendant had successfully completed his Proposition 36 drug program.

The trial court found defendant's testimony at the motions to vacate hearing to be credible.  The court explained that defendant believed his cases would be dismissed for all purposes, including immigration, and that defendant had never been informed "that everything will go away except his immigration."  The court also found that there was a presumption of invalidity and prejudice to defendant because his convictions had been set aside as a result of completing Proposition 36 drug programs.

18

Defendant entered his 2008 and 2014 pleas pursuant to a qualifying statute, and therefore he was entitled to a presumption of legal invalidity under the plain terms of section 1473.7, subdivision (e)(2). As previously noted, section 1473.7, subdivision (e)(2), creates a presumption of legal invalidity "if the moving party pleaded guilty or nolo contendere *pursuant to a statute that provided that*, upon completion of specific requirements, the arrest and conviction shall be deemed never to have occurred, where the moving party complied with these requirements, and where the disposition under the statute has been, or potentially could be, used as a basis for adverse immigration consequences." (§ 1473.7, subd. (e)(2), italics added.)

By the plain language of subdivision (e)(2), defendant did enter his pleas "pursuant to" a qualifying statute. (See § 1473.7, subd. (e)(2).) Section 1210.1, as amended by Proposition 36, provides in pertinent part that "[a]t any time after completion of drug treatment, a defendant may petition the sentencing court for dismissal of the charges. If the court finds that the defendant successfully completed drug treatment, and substantially complied with the conditions of probation, *the conviction on which the probation was based shall be set aside and the court shall dismiss the indictment, complaint, or information against the defendant. In addition, . . . both the arrest and the conviction shall be deemed never to have occurred*." (§ 1210.1, subd. (e), italics added.)

Because defendant established that his pleas were "pursuant to" a statute that satisfied the requirements of section 1473.7, subdivision (e)(2), he is entitled to a presumption under that subdivision that his pleas were legally invalid. The People do not

dispute that defendant entered his pleas pursuant to a qualifying statute. Rather, they contend the presumption of invalidity in subdivision (e)(2) violates Article VI, section 13 of the California constitution because "since statehood there has been a presumption of the correctness of a superior court judgment." The People also argue that enforcement of "section 1473.7, subdivision (e)(2)'s presumption of invalidity to all superior court orders taking guilty pleas involving diversion, despite the lack of evidence warranting doing so, undermines the separation of powers principle of California government" and that "[s]ection 1473.7, subdivision(e)(2) should be declared unconstitutional." We need not decide the constitutionality of subdivision (e)(2) because even if defendant was not entitled to presumptive relief under section 1473.7, subdivision (e)(2), the record demonstrates relief pursuant to section 1473.7, subdivision (a)(1).

D. *Analysis Under Subdivision (a)(1) of Section 1473.7*

In *Mejia*, *supra*, 36 Cal.App.5th 859, the defendant was charged in 1993 with three felony counts related to possession for sale of cocaine or cocaine base. (*Id.* at p. 862.) He pleaded guilty and initialed an immigration advisement on the plea form stating he understood that if he was not a United States citizen the conviction "'may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.'" (*Id.* at p. 863, italics omitted.)

In 2017, the defendant brought a motion pursuant to section 1473.7 to have his convictions vacated. (*Mejia*, *supra*, 36 Cal.App.5th at p. 863.) He submitted a

declaration in which he stated his former attorney (by that time deceased) had told him he had no choice but to take the plea deal, never asked about his immigration status or explained that pleading guilty would lead to deportation, and told him to sign all the boxes on the plea form. (*Ibid.*) The defendant declared that he would have fought the charges or tried to negotiate an immigration-neutral plea if he had known that pleading guilty to the charges would lead to deportation. (*Id.* at pp. 863-864.) An evidentiary hearing was conducted at which the defendant testified that his prior attorney did not discuss the possible immigration consequences of his plea and that he would not have accepted the negotiated plea and pleaded guilty if he had known it would harm him in the future. (*Id.* at pp. 864-865.) The trial court denied the motion, treating the defendant's claim as one based on ineffective assistance of counsel and concluding that the defendant "'failed to make a sufficient showing that he would have declined the plea and risked going to trial had he been more fully apprised of its immigration consequences.'" (*Id.* at p. 865, italics omitted.)

The Court of Appeal reversed, agreeing with the defendant that the "key" to section 1473.7 is not what the defense attorney said or did not say about the immigration consequences of the plea, but is "'the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken.'" (*Mejia*, *supra*, 36 Cal.App.5th at p. 866.) The court concluded that the defendant's undisputed testimony at the evidentiary hearing established he did not meaningfully understand or knowingly accept the immigration consequences of his guilty plea and would not have pleaded

guilty if he did. (*Id*. at p. 872.) The court stated, "[the defendant] plainly established his own 'error' within the meaning of section 1473.7, subdivision (a)." (*Ibid*.)

As to prejudice, the *Mejia* court concluded there was contemporaneous evidence to substantiate the defendant's claim he would not have accepted the plea agreement if he had known the immigration consequences of pleading guilty. (*Mejia*, *supra*, 36 Cal.App.5th at p. 872.) This contemporaneous evidence included the defendant's own life story (he had been living in the United States for eight years, since he was 14 years old; at the time of the guilty plea, he had a wife and an infant son, as well as his mother and siblings, here; he had no remaining family ties in Mexico), and the preliminary hearing transcript, which left uncertainties as to the strength of the prosecution's evidence. The court also noted that, given the circumstances that the defendant had no criminal history and his guilty plea was a plea to the court, it was likely that even after trial, the court would have sentenced him to probation with local time in custody, or a lower prison term. (*Id*. at pp. 872-873.)

More recently in *People v. Jung* (2020) 59 Cal.App.5th 842 (*Jung*), overruled in part on other grounds in *Vivar*, *supra*, 11 Cal.5th at p. 526, fn. 4, the court relied on *Mejia* to conclude the defendant met her burden of proving prejudicial error under section 1473.7, based mostly on her declaration demonstrating her misunderstanding and providing substantiating contemporaneous evidence of her ties to this country. (*Jung*, *supra*, at pp. 846, 858.) The court concluded that the defendant "did not meaningfully understand the immigration consequences of her pleas" (*id*. at p. 858), even though

counsel testified that he thoroughly advised all his clients about plea consequences and would have advised the defendant that her guilty plea would lead to her deportation (*id*. at p. 849). The court stressed that "[t]he question" presented by section 1473.7 "was *not* what [counsel] told [the defendant], but what [the defendant's] understanding was about the immigration consequences of her pleas." (*Jung*, *supra*, at p. 858, italics added.) The defendant satisfied section 1473.7 by showing her "'"own error in . . . not knowing that [her] plea would subject [her] to mandatory deportation and permanent exclusion from the United States."'" (*Jung*, *supra*, at pp. 858-859, italics omitted.) The trial court erred by focusing "on whether a third party caused [the defendant] to suffer prejudice rather than considering [the defendant's] mindset when pleading guilty." (*Id*. at p. 859.)

Turning to this case, we find the record demonstrates defendant did not meaningfully understand or knowingly accept the immigration consequences of his guilty pleas. In support of his section 1473.7 motions to vacate, among others, he submitted his declaration, a declaration from his immigration attorney, numerous character letters, work verification letters, his children's birth certificates, and his and his spouse's naturalization certificates. Defendant declared that he had pleaded guilty in both cases in exchange for Proposition 36 probation, that after he had successfully completed his probation in both cases he had filed motions to dismiss the cases, and that he understood he "was working to not have a conviction reflected on [his] record." At the motion to vacate hearing, defendant testified that when he had pleaded guilty to the charges, he believed that if he had completed a drug program under Proposition 36, his cases would

23

be dismissed "for all purposes," including immigration, and that neither his counsel nor the court informed him that "everything will go away except immigration consequences." Defendant explained that the immigration consequences were important to him and understood that if he completed his Proposition 36 drug program, the cases would be dismissed. He believed that he would not have to worry about any consequences, including the immigration consequences. We note that, in ruling on the motions, the trial court found defendant's testimony to be credible. An "appellate court does not reassess witness credibility but defers to the trial court's credibility determinations."[5] (*Jung*, *supra*, 59 Cal.App.5th at p. 853.)

The People contend that defendant provided no contemporaneous or objective evidence of prejudicial error. We disagree. "'Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.'" (*People v. Ogunmowo*, *supra*, 23 Cal.App.5th at p. 78, italics omitted.) The trial court must consider any other contemporaneous evidence along with the declaration in deciding a section 1473.7 motion. (See *Vivar*, *supra*, 11 Cal.5th at p. 530; *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1075-1076.) Here, defendant's declaration and testimony were supported by other contemporaneous and objective evidence. Defendant presented evidence that he had

---

[5] We reject the People's passing objection to defendant's testimony on hearsay and speculation grounds. The People forfeited this claim for failing to object in the court below. (See *People v. Dykes* (2009) 46 Cal.4th 731, 756.)

24

obtained a green card, and documents showing his family's lawful status in the United States, his employment status, immigration court deportation documents, the plea agreement forms, and the court's records of the plea hearing. The contemporaneous evidence established that defendant did not meaningfully understand or knowingly accept the actual or potential adverse immigration consequences of his pleas of guilty, despite initialing the immigration provisions in his plea forms, because he believed he would not have any adverse immigration consequences if he completed a drug program pursuant to Proposition. (See *Jung*, *supra*, 59 Cal.App.5th at pp. 857-858 [court explained the defendant's age of 21 years old and close family ties to the United States substantiated defendant's credible declaration that she did not understand the plea form she initialed and signed].) There is no dispute here that defendant was placed on Proposition 36 probation and that he had successfully completed probation. Although defendant understood the immigration consequences when he pleaded guilty and signed the plea forms, he also believed that he would not be subjected to any actual or potential adverse immigration consequences if he successfully completed his Proposition 36 probation.

Defendant also provided contemporaneous evidence to substantiate his claim that the immigration consequences were important to him. In his declaration, defendant declared, with supporting evidence, that he entered the United States in 1991, at age five, that he had obtained lawful permanent resident status in 2000, and that he had two children, a stepdaughter, and fiancé who are all United States citizens. Defendant also said, with supporting letters, that he was gainfully employed for the last seven years. He

did not believe that pleading guilty would result in potential or actual immigration consequences. Instead, he understood that he would not be subjected to the immigration consequences if he successfully completed Proposition 36 probation. Remaining in the United States was extremely important to him since his entire family is here, he had lived here for more than 30 years, and he had an established life here. Further, the drug possession offenses in 2008 were misdemeanors and the 2014 drug possession offense was reduced to a misdemeanor and were not the type of offenses that would have subjected defendant to a lengthy prison sentence. The above evidence supports a finding that there was a reasonable probability that defendant would not have pleaded guilty had he known the guilty pleas would result in mandatory and dire immigration consequences. (*Mejia*, *supra*, 36 Cal.App.5th at p. 871.)

We conclude defendant satisfied the test for prejudicial error set forth in *Mejia* and approved by our Supreme Court in *Vivar*. He showed by a preponderance of the evidence that he did not "meaningfully understand" he would be deported as a result of his guilty pleas, and that he would not have pleaded guilty had he known of that consequence. Exercising our independent review while deferring to the trial court's credibility determinations and factual findings, we conclude defendant did meet his burden for relief under section 1473.7. Consequently, the trial court did not err in granting defendant's motions to vacate the convictions as invalid due to prejudicial error. (§ 1473.7, subd. (e).)

E. *Dismissal of Cases*

The People contend the trial court erred in dismissing defendant's cases under section 1385 because they were not provided with notice or opportunity to be heard, the court failed to state its reasons in dismissing the cases as required by section 1385, the court lacked jurisdiction to dismiss the cases, and dismissal was not in the interest of justice. We disagree.

Originally codified in 1872, section 1385 states in relevant part: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal shall be stated orally on the record. The court shall also set forth the reasons in an order entered upon the minutes if requested by either party or in any case in which the proceedings are not being recorded electronically or reported by a court reporter." (§ 1385, subd. (a); see *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 520 [dismissal in furtherance of justice has existed since 1850].)

"Dismissals under section 1385 may be proper before, during and after trial." (*People v. Orin* (1975) 13 Cal.3d 937, 946.) "Because the concept of 'furtherance of justice' (§ 1385) is amorphous, [our Supreme Court has] enunciated some general principles to guide trial courts when deciding whether to dismiss under section 1385." (*People v. Hatch* (2000) 22 Cal.4th 260, 268.) "Courts must consider 'the constitutional rights of the defendant, and the interests of society represented by the People,' and '[a]t the very least, the reason for dismissal must be "that which would motivate a reasonable

27

judge.'" [Citations.]" (*Ibid.*, quoting *People v. Orin*, *supra*, 13 Cal.3d at p. 945.) A trial court's decision whether or not to dismiss an allegation or charge in furtherance of justice is reviewed for abuse of discretion. (See, e.g., *People v. Carmony* (2004) 33 Cal.4th 367, 373; *Polanski v. Superior Court* (2009) 180 Cal.App.4th 507, 536.)

" 'There is no statutory authority for a trial court to entertain a postjudgment motion that is unrelated to any proceeding then pending before the court. [Citation.] Indeed, a motion is not an independent remedy. It is ancillary to an on-going action and "'implies the pendency of a suit between the parties and is confined to incidental matters in the progress of the cause. As the rule is sometimes expressed, a motion relates to some question collateral to the main object of the action and is connected with, and dependent on, the principal remedy.'" [Citation.] In most cases, after the judgment has become final, there is nothing pending to which a motion may attach.' [Citation.]" (*People v. Picklesimer* (2010) 48 Cal.4th 330, 337.) However, there are some exceptions to this rule: "These exceptions generally arise in instances where the Legislature has expressly authorized such a motion. (See, e.g., § 17, subd. (b)(3) [motion to reduce a 'wobbler' to a misdemeanor]; § 1016.5, subd. (b) [motion to vacate judgment and withdraw a plea based on the immigration consequences of the plea]; § 1203.4 [motion by probationer to vacate plea and dismiss charges]; § 1473.6 [motion to vacate judgment based on newly discovered evidence of fraud].)" (*People v. Picklesimer*, *supra*, 48 Cal.4th at p. 337, fn. 2.)

In this case, the record indicates that the People were provided with notice and an opportunity to be heard prior to the court's dismissal of the cases. Even if they were not provided with such notice at the October 28, 2020 motion to vacate hearing, the People were clearly provided with such notice and opportunity to be heard at the November 30, 2020 motion to reconsider hearing. In addition, at that November 30 hearing, the trial court succinctly explained its reasons for dismissing the cases under section 1385. Further, under the circumstances of this case, we find the court had jurisdiction to dismiss defendant's cases under section 1385 because they arose from defendant's motions to vacate his guilty pleas and convictions pursuant to section 1473.7. (See *People v. Picklesimer*, *supra*, 48 Cal.4th at p. 337, fn. 2.) Also, although the record is unclear as to defendant's 2008 case, the record clearly indicates that defendant's 2014 case had previously been dismissed and his 2008 case was presumably dismissed, prior to filing the motions to vacate pursuant to section 1473.7. Moreover, the court thoroughly examined and considered defendant's constitutional rights and the interests of society represented by the People before dismissal of the cases. (*People v. Hatch*, *supra*, 22 Cal.4th at p. 268.) We find the trial court did not abuse of discretion in dismissing defendant's 2008 and 2014 cases in the interest of justice.

IV.

DISPOSITION

The orders granting the section 1473.7 motions to vacate the convictions and dismiss the cases are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____
J.

We concur:

RAMIREZ _____
P. J.

RAPHAEL _____
J.