Filed 5/11/26  P. v. Tinsley CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B341966 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA100602) |
| v. | |
| CEDRIC TINSLEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hilleri G. Merritt, Judge.  Affirmed as modified.

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Wyatt E. Bloomfield and Charles Chung, Deputy Attorneys General, for Plaintiff and Respondent.

───────────────────

A jury convicted defendant and appellant Cedric Tinsley of two counts of rape and one count of forcible oral copulation. The jury found true that Tinsley committed the offenses during the commission of a residential burglary. Tinsley challenges the jury's true finding, arguing that substantial evidence did not support the conclusion that he intended to commit the sexual offenses at the time of entry. The parties also contend that the abstract of judgment must be corrected to accurately reflect Tinsley's convictions. We modify the judgment and otherwise affirm.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

In 2023, Aruna A. lived in a triplex in a gated community in Northridge. Her garage was on the first floor; the kitchen and living room were on the second floor; and her bedroom and music studio were on the third floor. The community had several gates for vehicles and pedestrians with restricted access. However, there were no security guards at the gates. A person could enter on foot by following a car through the main gate or by walking through an unsecured pedestrian gate.

On June 30, 2023, Aruna drove home from the gym around 7:00 p.m. She parked in her garage. She testified that she did

───────────────────

[1] Consistent with the standard of review, we summarize the evidence in the light most favorable to the judgment. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263.) The jury implicitly rejected Tinsley's testimony that the victim invited him into her home and consented to all sexual activity.

not recall if she closed the garage door or if she locked the door leading from the garage to the inside of her residence.

Aruna, a music producer, went to her studio on the third floor to work. The studio was a windowless room, lit by colored LED strips on the ceiling and floor.

At 10:30 p.m., Aruna was still working in the studio. She was seated at her desk with her back to the door. Loud music was playing from speakers in the room. Aruna suddenly felt two hands grab her throat. Tinsley was behind her. He was whispering, but she could not hear what he was saying. Aruna begged him not to kill her. Tinsley forced her to her knees, took off her pants, and penetrated her vagina with his penis from behind. He turned her around and forced her to perform oral sex on him, then penetrated her vaginally with his penis a second time.

Tinsley then forced Aruna into her closet, first covering her face and later binding her ankles. Over the next several hours, she periodically heard him "rummaging" through her things and opening drawers. She noticed a pile of her things on the floor of the studio. At one point, Tinsley asked Aruna where she kept drugs, and she gave him marijuana and prescription medications from a cabinet. Subsequently, Aruna attempted to escape through the front door. Tinsley "threw himself against the door" to prevent her from opening it, punched her repeatedly in the face, and forced her back into the closet. He later took Aruna to the bathroom and made her lie on the floor while he showered. After he finished and left the bathroom, Aruna remained on the floor until she no longer heard him making any sounds.

At around 2:50 a.m., she left the bathroom and went into her studio. She noticed the pile of items on the floor of her studio

3

was gone.  She also noticed her laptop, cell phones, smart watch, iPad, hard drive, and purse were missing.  Her car was gone.  The following day, police arrested Tinsley in Simi Valley after observing him walking away from Aruna's car.  Police searched Tinsley and found numerous items taken from Aruna's home.

The People filed an information charging Tinsley with two counts of forcible rape (Pen. Code, § 261, subd. (a)(2); counts 1 & 5);[2] forcible oral copulation (§ 287, subd. (c)(2)(A); count 2); and grand theft of a car (§ 487, subd. (d)(1); count 4).[3]  The information further alleged that counts 1, 2, and 5 occurred during the commission of a residential burglary (§ 667.61, subd. (d)(4)); that appellant had been convicted of a prior strike (§§ 667, subds. (b)–(j), 1170.12); and six aggravating circumstances.

A jury found Tinsley guilty on all counts.  The jury also found true the allegation that Tinsley committed the sex offenses in the commission of a residential burglary (§ 667.61, subd. (d)(4)).

Tinsley waived his right to a jury trial on the factors in aggravation.  The trial court found the alleged prior strike and aggravating factors true beyond a reasonable doubt.  The court sentenced Tinsley to a total of 32 months plus 75 years to life: a determinate term of 32 months for the grand theft of an automobile (the low term of 16 months doubled for the strike),

---

[2]     Further undesignated statutory references are to the Penal Code.

[3]     The trial court granted the People's motion to strike a charge for false imprisonment by violence (count 3).

and three consecutive indeterminate terms of 25 years to life for each sex offense.

Tinsley timely appealed.

## DISCUSSION

## I. Applicable Legal Principles

### A. Section 667.61

A defendant commits burglary by entering a structure, or a room within a structure, without the consent of the owner or occupant and with the intent to commit a felony. (§ 459, subd. (a); *People v. Colbert* (2019) 6 Cal.5th 596, 606, citing *People v. Sparks* (2002) 28 Cal.4th 71, 81, 87.) Section 667.61, the "One Strike" law, "mandates indeterminate sentences of 15 or 25 years to life for specified sex offenses that are committed under one or more 'aggravating circumstances,' such as when the perpetrator . . . commits the sex offense during a burglary . . . ." (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 186.) The One Strike law imposes a sentence of 25 years to life on any person who commits rape or oral copulation "during the commission of a burglary of the first degree . . . with intent to commit" the sex offenses. (§ 667.61, subds. (a), (b)(3), (7), (d)(4).)

### B. Standard of Review

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . ' "[I]t is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's

5

findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) "The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296.)

" 'The intention with which an accused enters the house of another is a question of fact and where the circumstances of a particular case and the conduct of the accused reasonably indicate his purpose in doing so is to commit a larceny or any felony[,] a verdict of guilty of the crime of burglary will not be disturbed on appeal.' " (*People v. Bard* (1968) 70 Cal.2d 3, 5.)

## II. Substantial Evidence Supports the Jury's Finding That Tinsley Had the Specific Intent to Commit the Sex Offenses When He Entered Aruna's Studio

Tinsley argues that the evidence did not support the jury's conclusion that he entered Aruna's studio with the requisite felonious intent to commit rape or forcible oral copulation. We disagree.

Aruna testified that she parked in her garage earlier that day and possibly left the garage door open, leaving her car visible to passersby. At the time of the crime, LED strips on the floor and ceiling lit the studio, and she was playing loud music over speakers. It was in this context that Tinsley came into her studio, grabbed her throat from behind, and raped and sexually assaulted her multiple times. Only after he completed the offenses did Tinsley then spend hours "rummaging" through her home, piling her belongings on the floor, and demanding to know

the whereabouts of her drugs before absconding with her electronics and car. This evidence supported the inference that Tinsley was aware the studio was occupied before entry and that he immediately proceeded to rape and assault Aruna after he entered the room. The jury could therefore reasonably conclude that Tinsley entered the studio with the object of raping and sexually assaulting Aruna. (See *People v. Padilla* (1962) 210 Cal.App.2d 541, 543–544 [" 'When a strange man enters a woman's bedroom, covers her mouth with his hand, grasps her wrist while she screams and kicks, releases her when she bites his hand, and makes no effort to take any property, it is reasonable to infer that he intended to commit rape. . . .' "].)

Tinsley contends the jury could only speculate that he knew Aruna was in the studio before or as he entered because evidence that she was facing away from the door in a dark room indicates he may not have even seen her when he entered the studio, and there was no evidence that he came upon her and paused before entering the room. We disagree. Aruna testified that she may have left her garage door open, she was playing music on speakers from inside the studio, and the studio's LED lights were on. The jury could reasonably conclude Tinsley saw her car in the garage, heard the music as he ascended the stairs to the second floor, and saw her at her desk when he approached the door behind her. The jury adopted one reasonable interpretation of the evidence; that a contrary inference was possible does not mean the jury's finding was speculative. (*People v. Gomez* (2018) 6 Cal.5th 243, 308 [arguments that "simply present one interpretation of the evidence . . . do not suggest that it would be unreasonable to draw the opposite inference from the evidence"].)

7

To the extent Tinsley argues that he was "casing the home for items to steal" before entering the studio, we reject the contention because it has no basis in the evidence. In any event, this would not negate the inference that he had the specific intent to commit the sex offenses when he walked into the studio. The jury could have reasonably concluded that Tinsley's intent shifted once he realized someone was in the studio, or that he had more than one intent when he entered the studio. (See *People v. Reed* (1966) 241 Cal.App.2d 102, 105 [defendant had both intent to assault victim and intent to steal when he entered residence, committed assault, and stole purse].) Substantial evidence supported the jury's verdict.

## III. The Abstract of Judgment Is Modified to Reflect Tinsley Was Convicted of Forcible Rape in Count 5

Tinsley contends the trial court's minutes and abstract of judgment erroneously reflect that he was convicted and sentenced on count 5 for the dismissed charge of false imprisonment by violence. The People concede the error, and we agree.

The record indicates that the trial court struck the false imprisonment charge before trial and that Tinsley was charged with and convicted of forcible rape in count 5, and that he was sentenced accordingly. The abstract of judgment must be corrected to reflect a conviction of rape by force or fear (§ 261, subd. (a)(2)) on count 5. (*People v. Jones* (2012) 54 Cal.4th 1, 89; see also *People v. Mesa* (1975) 14 Cal.3d 466, 471.)

8

## DISPOSITION

We modify the judgment to conform to the jury's verdict finding Tinsley guilty of forcible rape under section 261, subdivision (a)(2), in count 5.  In all other respects, the judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment to reflect Tinsley's conviction for forcible rape in count 5 and to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

9